TONY WEST
Assistant Attorney General, Civil Division
DAVID J. KLINE
Director
JEFFREY S. ROBINS
Assistant Director
LANA L. VAHAB (DC 976203)
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4067
Fax: (202) 305-7000
Email: lana.vahab@usdoj.gov

Attorneys for all Defendants.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| BERNARDO MENDIA, | ) | No. C 10-03910 MEJ |
| | ) | |
| Plaintiff, | ) | **DEFENDANTS' MOTION TO DISMISS** |
| | ) | **PLAINTIFF'S FIRST AMENDED** |
| v. | ) | **COMPLAINT** |
| | ) | |
| JOHN M. GARCIA, *et al.*, | ) | Date: January 5, 2012 |
| | ) | Time: 10:00 a.m. |
| Defendants. | ) | Place: Courtroom B, 15th Floor |
| _____ | | |
| | | Honorable Maria-Elena James |

## TABLE OF CONTENTS

NOTICE OF MOTION

MEMORANDUM OF POINTS AND AUTHORITIES. ........................................ 1

I.     INTRODUCTION. ........................................................................... 1

II.    FACTS. ......................................................................................... 2

III.   ARGUMENT . ............................................................................... 4

     A.    Legal Overview ................................................................. 4

          1.    Motions to Dismiss Under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure..................................... 4

          2.    Standing. ................................................................... 5

     B.  The Court lacks jurisdiction over Mendia's claims. ................................ 6

          1.    Mendia lacks standing to bring any of his claims because he fails to allege that he has been injured as a result of ICE's detainer.. ...................................... 6

          2.    The Court also lacks jurisdiction to hear this action under 8 U.S.C. § 1252(g).. ............................................... 8

     C.    Qualified immunity shields Defendants Garcia and Chang from liability as to all of Mendia's Claims. ......................................... 9

          1.    Defendants Garcia and Chang did not violate any of Mendia's constitutional rights.................................. 11

          2.    A reasonable officer in Defendants' Garcia and Chang's positions could have believed that their actions, were lawful.. ............................................... 12

D.    Mendia has also failed to state any claims for relief because his allegations are factually inadequate.............................................. 12

    1.    Mendia has failed to state a legally viable due process claim (First Claim). .................................................. 12

    2.    Mendia has failed to state an equal protection claim (Second Claim.) ........................................... 14

    3.    Mendia has failed to state a claim for interference with right to bail (Third Claim)......................................... 16

    4.    Mendia has failed to state a claim for false imprisonment because he was never imprisoned by the Defendants (Fourth Claim).. .................................... 17

    5.    Mendia has failed to state a claim for malicious prosecution (Fifth Claim).......................................... 18

    6.    Mendia has failed to state a claim for abuse of process (Sixth Claim)............................................... 19

    7.    Mendia has failed to state a claim for negligence (Seventh Claim). ................................................... 20

    8.    Mendia fails to state a claim for Infliction of Emotional Distress (Eighth Claim).......................................... 21

        a.  Negligent Infliction of Emotional Distress. ....................... 21

        b.  Intentional Infliction of Emotional Distress....................... 22

CONCLUSION ................................................................................... 24

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Airas v. U.S. Immigration and Customs Enforcement, et al.*,
    No. 07-1959, 2008 U.S. (D. Minn. Apr. 23, 2008). ...................................... 8

*Allen v. Wright*,
    468 U.S. 737 (1984). .............................................................. 6, 7, 8

*Anderson v. Creighton*,
    483 U.S. 635, 640 (1987). ................................................... 10, 12

*Artiglio v. Corning Inc.*,
    18 Cal. 4th 604 (Cal. 1998). ........................................................ 20

*Ashcroft v. al-Kidd*,
    No. 10-98, 2011 WL 2119110,
    563 U.S. —(May 31, 2011). ........................................................ 10

*Ashcroft v. Iqbal*,
    556 U.S. , 129 S.Ct. 1937 (2009). ................................... 5, <u>passim</u>

*Ashoff v. City of Ukiah*,
    130 F.3d 409 (9th Cir. 1997). ...................................................... 4

*Ballard v. Uribe*,
    41 Cal. 3d 564 (1986). ................................................................. 21

*Balistreri v. Pacifica Police Dep't*,
    901 F. 2d 696 (9th Cir. 1990). .................................................... 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007). ............................................................. 5, 15

*Bennett v. Spear*,
    520 U.S. 154 (1997). ................................................................ 6, 7

*Berenyi v. INS*,
    385 U.S. 630 (1967). ................................................................. 13

*Brazil v. U.S. Dep't of Navy*,
    66 F.3d 193 (9th Cir. 1995). ............................................................................ 5

*Brown v. Kennard*,
    94 Cal. App. 4th 40 (Cal. Ct. App. 2001)...................................................... 19

*Burgess v. Superior Court*,
    2 Cal. 4th 1064 (1992). .................................................................................. 22

*Campillo v. Sullivan*,
    853 F.2d 593 (8th Cir. 1988). ...................................................................... 7, 8

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
    598 F.3d 1115 (9th Cir. 2010). ........................................................................ 5

*City of Santa Barbara v. Superior Ct.*,
    41 Cal. 4th 747 (Cal. 2007). .......................................................................... 21

*Cole v. Fair Oaks Fire Protection Dist.*,
    43 Cal. 3d 148 (1970). .............................................................................. 22, 23

*Conte v. Wyeth, Inc.*,
    168 Cal.App.4th 89 (Cal. Ct. App. 2008)...................................................... 20

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
    489 U.S. 189 (1989). ...................................................................................... 14

*Faheem-El v. Klincar*,
    841 F.2d 712, 719 (7th Cir. 1988). ................................................................ 16

*Fermino v. Fedco, Inc.*,
    7 Cal. 4th 701 (1994)..................................................................................... 17

*Fletcher v. Western National Life Insurance Company*,
    10 Cal. App. 3d 376 (1970). .......................................................................... 23

*Flores v. Morgan Hill Unified Sch. Dist.*,
    324 F.3d 1130 (9th Cir. 2003). ...................................................................... 11

*Foster v. Townsley*,
  243 F.3d 210 (5th Cir. 2001). .......................................................................... 9

*Friedman v. Merck & Co.*,
  107 Cal. App. 4th 454 (2003). ...................................................................... 22

*Garcia v. Taylor*,
  40 F.3d 299 (9th Cir. 1994). .................................................................... 7, 17

*Garcia-Villeda v. Mukasey*,
  531 F.3d 141 (2d Cir. 2008). ........................................................................ 14

*Grossman v. City of Portland*,
  33 F.3d 1200 (9th Cir. 1994). ...................................................................... 12

*Hardy v Vial*,
  48 Cal. 2d 577 (1957). .................................................................................. 18

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982). .............................................................................. 10, 12

*Hauptmann v. Wilentz*,
  570 F. Supp. 351 (D. N.J. 1983)..................................................................... 15

*Huggins v. Longs Drug Stores California, Inc.*,
  6 Cal. 4th 124 (1993)................................................................................... 22

*Hughes v. Pair*,
  46 Cal. 4th 1035 (2009)................................................................................ 23

*Humphries v. Various Federal USINS Employees*,
  164 F.3d 936 (5th Cir. 1999). ........................................................................ 9

*Hunter v. Bryant*,
  502 U.S. 224 (1991). .................................................................................... 13

*Ivey v. Bd. of Regents*,
  673 F.2d 266 (9th Cir. 1982). ........................................................... 5, 11, 14

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992). .................................................................. 5, 6

*Malley v. Briggs*,
    475 U.S. 335 (1986). .................................................................. 13

*Martinez-Madera v. Holder*,
    559 F.3d 937 (9th Cir. 2009). ........................................... 12, <u>passim</u>

*Matter of Baires-Larios*,
    24 I. & N. Dec. 467 (BIA 2008). ................................................ 13

*McGuire v. Turnbo*,
    137 F.3d 321 (5th Cir. 1998). ..................................................... 16

*McNutt v. General Motors Acceptance Corp.*,
    298 U.S. 178 (1936). .................................................................... 4

*Meadows v. Bakersfield Sav. & Loan Assn.*,
    250 Cal. App. 2d 749 (1967). ...................................................... 19

*Mohammed v. Sullivan*,
    866 F.2d 258 (8th Cir. 1989). ....................................................... 7

*Moreno v. Baca*,
    431 F.3d 633 (9th Cir. 2005). ..................................................... 10

*Murphy v. INS,*
    54 F.3d 605 (9th Cir. 1988). ................................................. 18, 21

*Nasious v. Two Unknown BICE Agents*,
    657 F. Supp. 2d 1218 (D. Colo. 2009) . ........................................ 13, 14, 16

*Orozco v. INS*,
    911 F.2d 539 (11th Cir. 1990). ..................................................... 7

*Osborn v. Haley*,
    127 S. Ct. 881 (2007). ................................................................ 16

*Potter v. Firestone Tire & Rubber Co.*,
    6 Cal. 4th 965 (1993). ............................................................. 21, 23

*Prieto v. Gluch*,
    913 F.2d 1159 (6th Cir. 1990). ...................................................... 7

*Reno v. American-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999). ...................................................................... 8

*Robertson v. Dean Witter Reynolds, Inc.*,
    749 F.2d 530, 533-34 (9th Cir. 1984)............................................. 4

*Roldan v. Racette*,
    984 F.2d 85 (2d Cir. 1993). ........................................................... 7

*Rombalski v. City of Laguna Beach*,
    213 Cal. App. 3d 842 (Cal. App. Ct. 1989).................................... 20

*Romero v. Kitsap County*,
    931 F.2d 624 (9th Cir. 1991). ...................................................... 10

*Sakiyama v. AMF Bowling Centers, Inc.*,
    110 Cal. App. 4th 398 (2003). ..................................................... 20

*Santana v. Chandler*,
    961 F.2d 514 (5th Cir. 1992). ........................................................ 7

*Saucier v. Katz*,
    533 U.S. 194 (2001). ....................................................... 10, 11, 12

*Sheldon Appel Co. v. Albert & Oliker*,
    47 Cal. 3d 863 (1989). ................................................................. 18

*Sissoko v. Rocha*,
    509 F.3d 947 (9th Cir. 2004). ........................................................ 9

*Spellens v. Spellens*,
    49 Cal.2d 210 (1957). .................................................................. 19

*Stack v. Lobo*,
   903 F. Supp. 1361 (N.D. Cal. 1995)......................................................... 5, 15

*U.S. v. Armstrong*,
   517 U.S. 456 (1996). ................................................................. 15

*United States v. Arenas-Ortiz*,
   339 F.3d 1066 (9th Cir. 2003). ................................................... 15

U.S. v. Salerno,
   481 U.S. 739, 754-55 (1987) ...................................................... 16

*United States v. Smith*,
   499 U.S. 160 (1991). ................................................................. 16

*Walker v. Holder*,
   589 F.3d 12 (1st Cir. 2009). ...................................................... 13

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2001). .................................................... 4

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990). .................................................................. 5

*Wilson v. Layne*,
   526 U.S. 603 (1999). ................................................................. 11

*Woods v. United States*,
   720 F.2d 1451 (9th Cir. 1983)...................................................... 16

*Zolicoffer v. U.S. Dep't of Justice*,
   315 F.3d 538 (5th Cir. 2003). ...................................................... 7

**STATUTES**

8 U.S.C. § 1252(g). ............................................................................. 1, 8, 9

8 U.S.C. § 1357. ...................................................................................... 12

28 U.S.C. § 2679(b)(1). .......................................................................... 16

28 U.S.C. § 2679(b)(2). .......................................................................... 16

**<u>REGULATIONS</u>**

8 C.F.R. § 287.7(a). .................................................................................. 12

**<u>FEDERAL RULES OF CIVIL PROCEDURE</u>**

Fed. R. Civ P. 12(b)(1). ....................................................................... 1, 4, 8

Fed. R. Civ P. 12(b)(4). .............................................................................. 1

Fed. R. Civ P.  4(i)(3). ............................................................................... 1

Fed. R. Civ P.  8(a)(2). ............................................................................... 5

Fed. R. Civ P. 12(b)(6). ............................................................... 4, <u>passim</u>

**<u>MISCELLANEOUS</u>**

Cal. Civ. Code § 1714(a). ....................................................................... 20

# NOTICE OF MOTION

PLEASE TAKE NOTICE that on January 5, 2012, at 10:00 am in Courtroom B, 15th Floor, 450 Golden Gate Avenue, San Francisco, California, Defendants, the United States Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE") Agents John M. Garcia and Ching Chang, will move this Court for an order dismissing Plaintiff Bernardo Mendia's ("Mendia") First Amended Complaint for lack of jurisdiction and failure to state a claim upon which relief may be granted pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. This motion is based on this notice, the following memorandum of points and authorities, the pleadings and papers on file in this action, the reply, and such oral argument as the Court may permit.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On August 11, 2011, Plaintiff Bernardo Mendia ("Mendia") filed his First Amended Complaint alleging that he was injured by a wrongly issued ICE detainer. ("FAC," ECF No. 28.) Mendia's FAC differs from the original complaint *only* in the following: (1) Mendia added a new defendant (Ching Chang); (2) Mendia added threadbare, formulaic recitals of the elements of his claims; and (3) Mendia included additional conclusory factual allegations. Mendia now seeks a total of over $119 million dollars from ICE Agents Garcia, Chang and DOES 1-49, and the U.S. Department of Homeland Security ("DHS"). Mendia never alleges that he spent any time in U.S. Immigration and Customs Enforcement ("ICE") custody, nor that he faced any immigration-related legal proceedings. In fact, according to Mendia, all of his claims arise out his time in the West County Detention Facility ("WCDF"), where he was a pre-trial detainee in the custody of the California state authorities.

As a preliminary matter, Mendia lacks standing to bring any claims against Defendants because none of Mendia's alleged injuries were, or could have been, caused by Defendants. Therefore, the Court should summarily dismiss Mendia's FAC for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. However, in the event this Court concludes that Mendia has standing, the Court must dismiss Mendia's claims on other grounds. First, 8 U.S.C. § 1252(g) bars this Court from reviewing any of Mendia's claims because they arise from ICE's decision to "commence proceedings." Second, the Court lacks jurisdiction over me Mendia's claims against Garcia and Chang in their personal capacities because the claims are barred by the doctrine of qualified immunity.[1] Finally, setting aside these

---

[1]  Despite naming Defendant John Garcia in his personal capacity in the FAC, Mendia has failed to personally serve Garcia in accordance with Federal Rule of Civil Procedure 4(i)(3). Mendia has had ample opportunity to do so. (*See* Stipulations according Mendia more time to effectuate service at ECF Nos. 29 and 32.) Therefore Defendant Garcia is not properly before this Court and the Court has no jurisdiction over claims related to Garcia. Fed. R. Civ P. 12(b)(4) and (5). In an abundance of caution, and without waiving service, Defendant Garcia presents all the other arguments for why the Court should dismiss the FAC in this Motion.

initial arguments, Mendia's constitutional claims, as well as his common and state law tort claims, are unsupported by any plausible allegations in his complaint and the Court should therefore dismiss them for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.    FACTS

Mendia is a U.S. citizen.  (FAC ¶¶ 8, 27.)  Mendia was born in Mexico and derived citizenship from his mother.[2] (FAC, Exhibit 1; *Id.* ¶ 27.)  On June 15, 2007, Mendia was detained in the WCDF in Contra Costa County, California, on state law charges.  (*Id.* ¶¶ 25, 26, and 47.)  According to Mendia, at some point during his detention, he was approached by ICE agents, whom he believes to be John M. Garcia and Ching Chang.  (*Id.* ¶ 25.)  Mendia alleges that Garcia and Chang questioned him about his citizenship.  (*Id.* ¶ 27.)  Mendia allegedly informed Garcia and Chang that Mendia was a U.S. citizen.  (*Id.*)  Mendia claims that he told the agents that "he had a valid social security number" and that his "most recent United States Passport . . . was last issued in June of 1997 in San Francisco (California)," and "that the Plaintiff was a United States Citizen on account of the Plaintiff's mother being a United States citizen."  (*Id.* ¶ 27.)  Furthermore, Mendia instructed the agents to contact his attorney of record if they required any further proof of his citizenship.  (*Id.* ¶ 28.)

After this interaction, ICE issued a detainer request to WCDF.  (*See* Exhibit 1.)  This detainer requested that WCDF notify ICE when WCDF decided to release Mendia.  (*Id.*)  The immigration detainer issued against Mendia specifically notified WCDF of the following: "Investigation has been initiated to determine whether [Plaintiff] is subject to removal from the United States."  (*Id.*)  It further advised WCDF of the request to hold Mendia for up to 48 hours after he would otherwise be released, so as to allow ICE to assume custody of him.  (*Id.*)  Finally, the detainer conveyed ICE's request that WCDF notify ICE prior to Mendia's release from

---

[2] People not born in the United States may become citizens through naturalization or by virtue of deriving or acquiring citizenship from their parents.  Upon information and belief, Mendia was actually born in Mexico on October 24, 1972, and derived U.S. citizenship through his mother in 1987, when Mendia was around 15 years old.

county jail. (*Id.*) The detainer contains no instruction to anyone with respect to the conditions of bail for the detainee. Furthermore, Mendia does not allege that either WCDF or ICE took any further action on the detainer.

However, Mendia claims that the presence of the detainer, even with the words "drop hold," had a "chilling effect" on his ability to post bail while he remained in pre-trial detention for over two years from June 15, 2007, until his release on July 31, 2009. (*Id.* ¶ 35.) Mendia claims that, but for the detainer, he had the means and ability to bail out of pre-trial custody. (*Id.* ¶¶ 18-21, 35, 37, and 38.) According to Mendia, he contacted various bail bondsmen, but was told that they would not help him because of the ICE detainer.[3] (*Id.* ¶¶ 37-38 .) Mendia fails to allege why, despite being sure of his U.S. citizenship and despite having "unfettered" and "unusual access" to the facilities at the jail, he never contacted ICE by telephone or mail to inquire about the "hold" or to demand that it be lifted. (*Id.* ¶¶ 40-41, 80.)

According to Mendia, around January 8, 2008, he coincidentally came across ICE agent Garcia at WCDF. (*Id.* ¶¶ 41-43.) During this encounter, Mendia claims he provided the agent with "affirmative proof" of Mendia's U.S. citizenship. (*Id.* ¶ 42.) Mendia does not state what that proof was, or whether it was different from the information he provided during his first encounter with ICE agents. (*Id.*) According to Mendia, shortly after receiving the "affirmative proof," ICE "dropped" the detainer. (*Id.* ¶ 45.) After his "encounter" with Garcia on January 8, Mendia does not allege having had any further encounters with ICE, nor does he allege that he ever actually entered ICE custody. (*See e.g.,* FAC ¶¶ 54, 60(b), 94.) Despite the fact that the detainer was dropped soon after the January 8, 2008 encounter, Mendia did not post bail or otherwise leave WCDF until July 31, 2009, almost 1.5 years later. (*Id.* ¶¶ 18, 53.)

Mendia also alleges that he did not need to bail out of WCDF and that he could have been released on his own recognizance. (*Id.* ¶¶ 56, 59, and 60.) But according to Mendia, he "had to

---

[3] Mendia's allegation that he attempted to post bail with the help of bail bondsman is directly contradicted by his claims during his FTCA proceedings with DHS. In a letter to ICE Associate Counsel Erik Gantzel, Mendia conceded that he did not attempt to post bail because he believed that any effort to do so would have been futile. (*See* Exhibit A, March 10, 2010 Letter to Erik Gantzel).

decline [the offer to be released on his own recognizance] because of the belief that there was an immigration detainer placed on the [him] and that accepting the grant of own recognizance release would only serve to place the Plaintiff in the 'actual' custody of the United States Department of Homeland Security and prejudice the Plaintiff's state case defense due to his absence from the state proceedings." (*Id.* ¶ 56.) Mendia does not explain why he feared being placed in ICE custody despite having "affirmative proof" of his U.S. citizenship. (FAC ¶ 42.)

On June 15, 2009, Mendia filed a timely Federal Tort Claims Act ("FTCA") with the DHS. The claim was denied on March 1, 2010. (*Id.* ¶ 74.) On August 31, 2010, Mendia filed the instant action seeking over $119 million dollars based on the detainer ICE placed on him while he was in state custody, which ICE dropped 1.5 years before Mendia left state custody and after Mendia provided ICE with "affirmative proof" of his U.S. citizenship.

## III.     ARGUMENT

### A.     Legal Overview

#### 1.     Motions to Dismiss Under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

A court should grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) if it lacks subject matter jurisdiction over the plaintiff's suit. *See* Fed. R. Civ. P. 12(b)(1). The plaintiff has the burden of alleging facts sufficient to establish the court's subject matter jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182 (1936); *Ashoff v. City of Ukiah*, 130 F.3d 409, 410 (9th Cir. 1997). In determining whether it has subject matter jurisdiction, a court is not limited to the allegations in the complaint. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2001). Rather, the court is permitted to look beyond the complaint to extrinsic evidence, and need not assume the truth of the complaint's allegations. *Id.* at 1242.

A court should grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F. 2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)). Although the court must accept the plaintiff's well-pleaded facts as true and

draw reasonable inferences in his favor, allegations that are conclusory, vague, or speculative are insufficient to survive a motion to dismiss. *See Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982); *Stack v. Lobo*, 903 F. Supp. 1361, 1369 (N.D. Cal. 1995). Notably, the requirement that a court treat a plaintiff's factual allegations as true does not apply to legal conclusions, and, accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. __, __, 129 S.Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that, in order to survive a 12(b)(6) motion, the plaintiff must set forth "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Moreover, the plaintiff must state a claim that is plausible on its face by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court should dismiss a claim under Rule 12(b)(6) if the plaintiff's well-pleaded facts do not allow the court to infer "more than the mere possibility of misconduct." 129 S.Ct. at 1950 (citing Fed. R. Civ. P. 8(a)(2)).[4]

### 2. Standing

Article III of the Constitution "gives the federal courts jurisdiction over only 'cases and controversies,' and the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). In order to establish standing, the plaintiff must show: (1) an "injury in fact," such as an invasion of a legally protected interest; (2) "a causal connection between the injury and the conduct complained of;" and (3) that it is "likely," rather than merely "speculative," that a favorable decision will redress the injury. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

---

[4] "Although a *pro se* litigant . . . may be entitled to great leeway when the court construes his pleadings, those pleadings nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong." *See Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995).

To satisfy the first and second standing requirements – injury and causation – Mendia must show a "causal connection between the injury and the conduct complained of – the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Bennett v. Spear*, 520 U.S. 154, 167 (1997). A chain of causation that is indirect and attenuated, and that requires speculation to link the defendant's conduct to the plaintiff's injury, is not constitutionally sufficient." *Allen v. Wright*, 468 U.S. 737, 757-58 (1984).

## B. The Court lacks jurisdiction over Mendia's claims

### 1. Mendia lacks standing to bring any of his claims because he fails to allege that he has been injured as a result of ICE's detainer.

All of Mendia's claims are premised on two theories: (1) ICE's detainer had a "chilling effect" on his ability to "employ the services of a bail bondman;" and (2) this in turn resulted in his "constructive detention" in ICE custody. (FAC ¶¶ 35, 54, and 94.) These theories, however, fail to allege facts sufficient to show that Garcia, Chang, or DHS "caused" Mendia an "injury in fact" as a result of the allegedly wrongly-placed detainer. Without meeting these two essential requirements, Mendia has no standing to bring this suit. *Lujan*, 504 U.S. at 560-61.

To bolster his "chilling effect" theory, Mendia adds new allegations in the FAC regarding his failed attempts to post bail. These allegations, however, contradict his previous statements during the administrative exhaustion of his FTCA claims. Previously, Mendia asserted that he did not attempt to post bail because such attempts would have been futile. (*See* Exhibit A.) Further straining the plausibility of these claims is their marked absence from Mendia's original complaint. (*See* ECF No. 1.) In determining jurisdiction, the court is under no obligation to credit implausible allegations. *Iqbal*, 129 S. Ct. at 1949. Here, the Court should discount Mendia's allegations that he had the necessary funds to post bail, or that most importantly, he had attempted to do so and that he was unsuccessful because of the ICE detainer. Therefore, Mendia's argument that his inability to post bail was caused by ICE is entirely "speculative" and insufficient for the purpose of establishing standing. In fact, given that Mendia did not leave the WCDF for another 1.5 years after his detainer was lifted, it is more likely than

1  not that he did not post bail simply because he did not have the funds.

2      Even assuming that Mendia did attempt to post bail and had the necessary funds, but was

3  turned away by various bail bondsmen (as he alleges), Mendia offers no reasonable explanation

4  to tie the actions of bail bondsmen to those of ICE.  (FAC ¶¶ 35-39.)  Mendia does not, for

5  example, allege that the detainer contained any language forbidding or discouraging bail

6  bondsmen from working with detainees like Mendia, nor does Mendia allege that any bail

7  bondsmen had any contact with ICE regarding Mendia and his detainer.  Thus, Mendia utterly

8  fails to establish a causal connection – as required by the standing doctrine – between ICE's

9  actions and those of private actors – the bail bondsmen.  *See Allen*, 468 U.S. at 757-58.

10  Likewise, Mendia makes no effort to reconcile his contention that the state authorities offered for

11  him to be released without bail on his own recognizance with his contention that the ICE detainer

12  was the only thing that stood between him and freedom.  (Compare FAC ¶¶ 35-39; FAC ¶56.)

13  Given these contrary allegations, Mendia cannot show causation sufficient to bring a claim

14  against Defendants for his detention of WCDF.  *See Bennett*, 520 U.S. at 167.

15      Furthermore, Mendia offers no explanation as to how he was "constructively detained" by

16  ICE, when according to his allegations, he was at all times in the custody of the state authorities

17  and subject to pre-trial detention.  (FAC ¶¶ 40, 56.)  Irrespective of Mendia's bail allegations, the

18  injury Mendia complains of – "constructive detention" in ICE custody – does not give him

19  standing to bring this suit because it is not factually plausible.  In fact, it has been well

20  established by this circuit, (and others) that an ICE detainer, standing alone, does not constitute

21  ICE detention.  *Garcia v. Taylor*, 40 F.3d 299, 303-04 (9th Cir. 1994).[5]  Thus, Mendia's

22  "constructive detention" theory is not legally cognizable because an ICE detainer does not

23  constitute custody.  *Id.*

24  ――――――――――――

25      [5] *See also Zolicoffer v. U.S. Dep't of Justice*, 315 F.3d 538, 539 (5th Cir. 2003); *Orozco v.*
26  *INS*, 911 F.2d 539, 541 (11th Cir. 1990) ("The filing of the detainer, standing alone, did not cause
   Orozco to come within the custody of the INS."); *Roldan v. Racette*, 984 F.2d 85, 88 (2d Cir. 1993)
27  (reviewing caselaw); *Santana v. Chandler*, 961 F.2d 514, 516 (5th Cir. 1992); *Prieto v. Gluch*, 913
   F.2d 1159, 1162 (6th Cir. 1990); *Mohammed v. Sullivan*, 866 F.2d 258, 260 (8th Cir. 1989); and
28  *Campillo v. Sullivan*, 853 F.2d 593 (8th Cir. 1988).

In sum, neither Mendia's non-legally cognizable "constructive detention theory" nor his "indirect and attenuated" "chilling effect" theory can accord him standing to bring his claims. Mendia's "injur[ies]" and their alleged "causation" are not "constitutionally sufficient" to meet the Article III standing requirement and the Court should dismiss Mendia's complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Allen*, 468 U.S. at 757-58.

## 2. The Court also lacks jurisdiction to hear this action under 8 U.S.C. § 1252(g).

Even assuming that Mendia can show that he has suffered an injury as a result of Garcia and Chang's actions, this Court nonetheless lacks jurisdiction over Mendia's *Bivens* claims because all of them arise from ICE's decision to initiate removal proceedings against Mendia.[6] *See* 8 U.S.C. § 1252(g). That statute states, in pertinent part:

> [E]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, United States Code, or any other habeas corpus provision and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against an alien under this chapter.

8 U.S.C. § 1252(g); *see also Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 477-78 (1999). In fact, as the Supreme Court observed in *American-Arab*, "many provisions of IIRIRA (the statute that enacted § 1252(g)) are aimed at protecting the Executive's discretion from the courts - indeed, that can fairly be said to be the theme of the legislation." 525 U.S. at 486. According to the Supreme Court, "Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Id.* at 477-8 n 9.

Further, the U.S. District Court for the District of Minnesota has dismissed *Bivens* claims under § 1252(g) in the case of aliens who were removed because those plaintiffs' claims arose "from conduct that was a direct result of the DHS Secretary's decision to commence removal proceedings against them." *See Airas v. U.S. ICE, et al.*, No. 07-1959, 2008 U.S. Dist. Lexis

---

[6] The fact that ICE learned that Mendia was a U.S. citizen and lifted the detainer before it issued him a Notice to Appear does not take away from the argument that at the time the detainer was issued, ICE believed it to be the preliminary step in the removal of a potentially criminal alien.

34072 at *22-23 (D. Minn. Apr. 23, 2008); *see also Sissoko v. Rocha,* 509 F.3d 947, 949 (9th Cir. 2004); *Foster v. Townsley*, 243 F.3d 210, 214 (5th Cir. 2001) (quoting *Humphries v. Various Fed. USINS Employees,*164 F.3d 936, 943 (5th Cir. 1999) (holding that under 8 U.S.C. § 1252(g) plaintiff's claims of excessive force, denial of due process, denial of equal protection, and retaliation were all connected to the execution of his deportation order)).

Here, too, Mendia brings *Bivens* lawsuits against Chang and Garcia – the agents who according to Mendia issued his ICE detainer. This was the ICE agents' first decision and action in the commencement of removal proceedings against Mendia, and thus an exercise of prosecutorial discretion. The fact that Garcia lifted the detainer before it became operational does not alter the fact that the detainer was placed with the intention to potentially initiate removal proceedings against Mendia. Actual removal proceedings were never initiated because Mendia provided Garcia with "affirmative proof" of his U.S. citizenship while Mendia was still a pre-trial detainee in WCDF and before ICE issued an NTA. This Court should find that Garcia and Chang's issuance of a detainer in this case constitutes the type of prosecutorial actions "arising from" the decision to commence removal proceedings that § 1252(g) protects from judicial intervention. The Fifth Circuit Court of Appeals has stated that "[c]laims that are clearly included within the definition of 'arising from' ... [are] those claims connected directly and immediately with a 'decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." *Foster*, 243 F.3d at 214 (quoting *Humphries* 164 F.3d at 943. Accordingly, this Court should dismiss all the claims under 8 U.S.C. § 1252(g).

### C. Qualified immunity shields Defendants Garcia and Chang from liability as to all of Mendia's claims.

Mendia brings *Bivens* claims against Defendants Garcia and Chang and the unknown DOES 1-49 for compensatory and punitive damages in their personal capacities for violating of his rights to due process and equal protection, as well as for interfering with his Eighth Amendment right to bail. (FAC ¶¶ 77-92). Defendants Garcia and Chang are entitled to qualified immunity and should be dismissed from this action.

ICE Agents, like all federal officials, are entitled to qualified immunity as long as "their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, regardless of whether the constitutional violation occurred, a federal official should prevail if the right asserted by a plaintiff was not "clearly established" or the officer could have reasonably believed that his particular conduct was lawful. *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). Most recently, the Supreme Court stated that qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, No. 10-98, 2011 WL 2119110, at *9, 563 U.S. — (May 31, 2011).

The test to determine whether a federal official is entitled to qualified immunity involves a two-step analysis. *See Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). First, the court must determine whether, taking the facts in the light most favorable to the party asserting the injury, the officer's conduct violated a constitutional right. *Id.* Second, if the officer violated the plaintiff's constitutional rights, the court must determine whether the right was clearly established at the time the alleged violation occurred. *Id.*

In order for a court to find that a right is clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In its analys, this Court "need not find a prior case with identical, or even 'materially similar' facts," but the right must be established with sufficient specificity, and in a "particularized [ ] sense," so that "the government officials have 'fair and clear warning' that their conduct is unlawful." *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1136-37 (9th Cir. 2003). The inquiry into whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201.

Defendants Chang and Garcia have not violated any of Mendia's constitutional rights because at no point did Mendia enter ICE custody, nor could ICE be held responsible for

Mendia's failure to bail out. *See* supra section B.1. Furthermore, Mendia's allegations that he provided Garcia and Chang all the information necessary to establish his citizenship are simply incredible and should be discounted. (FAC ¶ 27.) In fact, Mendia admits that he did not provide "affirmative proof" of his citizenship until he had a chance encounter with Garcia on January 8, 2008. (FAC ¶ 42.) Therefore, it was reasonable for Chang and Garcia to assume that they were issuing a detainer for an alien rather than a U.S. citizen, and thus they had no "fair and clear warning that their conduct was unlawful. *Flores*, 324 F.3d at 1136-37.

> **1.      Defendants Garcia and Chang did not violate any of Mendia's constitutional rights.**

As explained more fully below, Mendia's conclusory allegations simply fail to show that Garcia and Chang violated any of his constitutional rights. Agents Chang and Garcia had good reason to believe that Mendia was not a U.S. citizen based on his birth abroad. Thus, they did not violate his due process rights when they issued a detainer for him while he was a pre-trial detainee in state custody. (FAC ¶ 27.) Defendants Chang and Garcia likewise did not violate Mendia's equal protection rights because Mendia's conclusory allegations that Garcia and Chang targeted him on account of his Hispanic surname are simply too conclusory to state an equal protection claim. (*Id.* ¶ 85.) *See Ivey*, 673 F.2d at 268. Finally, Mendia fails to allege that Garcia and Chang violated his Eight Amendment right to bail because: (1) nothing on the face of the detainer prevented Mendia from posting bail; (2) Mendia claims he did not need bail and could have left the WCDF on his own recognizance; and (3) he remained in WCDF for another 1.5 years after the detainer was lifted.

> **2.      A reasonable officer in Defendants' Garcia and Chang's positions could have believed that their actions were lawful.**

Even if this Court were to find that Defendants Chang and Garcia violated Mendia's constitutional rights when they issued him a detainer, that is not the end of the Court's inquiry. Qualified immunity still protects Chang and Garcia from liability if the rights at issue were not clearly established. *See Wilson v. Layne*, 526 U.S. 603, 617 (1999) (holding that officers who followed a media ride-along policy were entitled to qualified immunity, despite the Court's

determination that the policy was unconstitutional); *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994) (officers who enforced local ordinance regarding public gatherings were entitled to qualified immunity, though the ordinance was unconstitutional).  For the right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202 (quoting *Anderson v. Creighton*, 483 U.S. at 640.

Here, there is no judicial opinion that could render the immigration detainer issued by Garcia and Chang – who had reason to believe that Mendia was an alien or had lied about his identity – unconstitutional.  In light of Mendia's birth abroad and his failure to provide affirmative proof of his citizenship until 208 days after his custody began, Garcia and Chang issued an immigration detainer that complied in all respects with 8 U.S.C. § 1357 and 8 C.F.R. § 287.7(a).  And, importantly, there can be no doubt that sufficient case law existed to permit a reasonable officer standing in Chang and Garcia's shoes to believe that their actions were lawful under the circumstances.[7]  Thus, because Chang and Garcia's actions were objectively reasonable, qualified immunity shields them from liability here.  *See Harlow*, 457 U.S. at 818.

Because they acted consistent with the Constitution, the individual *Bivens* Defendants Chang, Garcia, and DOES 1-49 are entitled to dismissal of all Mendia's claims against them in their personal capacities based on qualified immunity.

> **D.    Mendia has also failed to state any claims for relief because his allegations are factually inadequate.**

> **1.  Mendia has failed to state a legally viable due process claim (First Claim).**

Reading Mendia's FAC most liberally, it appears that he claims to have been deprived of a liberty interest as a result of an erroneously placed immigration detainer.  However, Mendia admits having been born in Mexico and having derived his citizenship from his mother.  (FAC ¶ 27.)  Under well established law, ICE had good reason to assume that Mendia was an alien,

---

[7] *See Martinez-Madera v. Holder*, 559 F.3d 937, 940 (9th Cir. 2009) (because foreign birth gives rise to a rebuttable presumption of alienage, a claimant born abroad bears the burden of proving his U.S. citizenship).

based on birth abroad when faced with an absence of proof to the contrary.[8] *See Martinez-Madera*, 559 F.3d at 940 (because foreign birth gives rise to a rebuttable presumption of alienage, a claimant born abroad bears the burden of proving his U.S. citizenship).[9] Furthermore, Mendia admits that once he provided ICE with "affirmative proof" of his citizenship, ICE Agent Garcia promptly lifted the detainer. (FAC ¶¶ 42, 45.)

The facts of this case are analogous to those in *Nasious v. Two Unknown BICE Agents*, 657 F. Supp. 2d 1218, 1221 (D. Colo. 2009), *aff'd*, 366 F. App'x 894 (10th Cir. 2010). There, a state detainee brought a *pro se Bivens* action against an ICE agent, alleging that the agent violated his due process rights when the agent lodged an immigration detainer against him. *Id.* at 1221. As in Mendia's case, Nasious was in jail awaiting the disposition of state criminal charges against him when the ICE agent issued the detainer. *Id.* The ICE agent issued the detainer believing that the Nasious was Greek, because there were no agency records showing that the plaintiff had a visa entitling him to remain in the United States. *Id.* The ICE agent then withdrew the detainer – approximately eight months later – when he discovered that the Nasious was actually a U.S. citizen. *Id.*

In *Nasious*, the court found that "there was no final deportation order issued, no formal deportation proceedings were ever commenced . . . [and] there was no effort by ICE to establish physical custody of Plaintiff after he served his current prison term." *Id.* at 1230. Thus, district

---

[8] It is was not up to Defendants Garcia and Chang to formally determine whether or not Mendia was a U.S. citizen. Rather, for purposes of issuing a detainer that resulted in no detention, ICE needed no cause at all. Because qualified immunity "gives ample room for mistaken judgments," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), Mendia must show that there was an unquestionable absence of probable cause when the detainer was issued. *See Hunter v. Bryant*, 502 U.S. 224, 226 (1991) ("Even law enforcement officials 'who reasonably but mistakenly conclude that probable cause is present' are entitled to immunity"). Since ICE agents required no cause at all to issue a detainer that resulted in no detention, Mendia cannot make the showing required under *Hunter,* 502 U.S. at 226.

[9] *See also Matter of Baires-Larios*, 24 I. & N. Dec. 467, 468 (BIA 2008); *Walker v. Holder*, 589 F.3d 12 (1st Cir. 2009) (quoting *Berenyi v. INS*, 385 U.S. 630, 637 (1967) ("Because citizenship confers 'privileges and benefits,' and, 'once granted, cannot lightly be taken away,' any 'doubts [about the individual's citizenship] should be resolved in favor of the United States and against' him.")

court concluded that the ICE detainer "could not, as a matter of law, constitute a restraint on or deprivation of a liberty interest upon which a due process violation could be premised" because the ICE detainer did not cause Nasious to be detained. *Id.* at 1223 (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989) ("In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf – through incarceration, institutionalization, or other similar restraint of personal liberty – which is the "deprivation of liberty" triggering the protections of the Due Process Clause[.]").

Here, ICE never initiated removal proceedings against Mendia, and never sought to obtain physical custody over him. To the contrary, ICE lifted the detainer upon discovering that Mendia was a U.S. citizen, and thus Mendia suffered no prejudice. (FAC ¶ 45.) Therefore, the Court should dismiss Mendia's claim for due process violations under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Garcia-Villeda v. Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008) ("Parties claiming denial of due process in immigration cases must, in order to prevail, allege some cognizable prejudice fairly attributable to the challenged process. Petitioner fails to demonstrate how the alleged shortcomings have prejudiced the outcome of his case.") (internal citations omitted).

## 2. Mendia has failed to state an equal protection claim (Second Claim.)

Mendia claims that Defendants Chang and Garcia treated him differently from other U.S. citizens by wrongfully subjecting him to an immigration detainer because he is "Hispanic." (FAC ¶¶ 82-86.) Mendia offers no factual basis for this claim, nor does he elaborate whether this assertion covers other U.S. citizens, who like him, were not born in the United States. *Id.* Mendia's allegations are exactly the kind of conclusory allegations which the Ninth Circuit and this Court have found to be inadequate to state a claim. *See Ivey*, 673 F.2d at 268; *Stack*, 903 F. Supp. at 1369. Although "detailed factual allegations" are not necessary to survive a Rule 12(b)(6) motion to dismiss, in order to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 129 S. Ct. at 1951 (""[f]ormulaic recitation of the elements' of a constitutional discrimination claim" will not

suffice).

"To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." *U.S. v. Armstrong*, 517 U.S. 456, 465-66 (1996); *see also U.S. v. Arenas-Ortiz*, 339 F.3d 1066, 1068-69 (9th Cir. 2003) (refusing to permit discovery in a discriminatory prosecution case where plaintiff failed to show that non-Hispanic males who: (1) were aliens; (2) had been removed or deported from the United States; and (3) had re-entered without the consent of the Attorney General "could have been prosecuted, but were not"). Mendia makes no attempt to establish this disparity, but instead simply speculates that were his name "Bernard Foster" and not Bernardo Mendia, that he would not have been questioned by ICE with regard to his citizenship. (FAC ¶ 85.)

Furthermore, none of Mendia's assertions amount to an allegation of racial animus on the part of ICE or Garcia. Mendia does not, for example, allege that Defendants made any remarks about his race which might have led him to believe that their actions toward him were motivated by racial animus. Thus, based on Mendia's allegations, there is no more reason to believe that the detainer ICE placed on him was motivated by racial animus, rather than ICE's belief that Mendia was born abroad, coupled with Mendia's admitted failure to provide "affirmative proof" of his citizenship until "208 days" after ICE initiated the detainer. (FAC ¶45; FAC Exhibit 1.)[10]

Therefore, the Court should dismiss Mendia's equal protection claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[10] *See also Hauptmann v. Wilentz*, 570 F. Supp. 351, 386 (D.N.J. 1983) (finding that plaintiff had not plead sufficient facts to support the allegation that the prosecutor had conspired with other law enforcement agents "because of his German heritage, rather than because he was found with the ransom money or because they needed a scapegoat, or for some other reason").

### 3. Mendia has failed to state a claim for interference with right to bail (Third Claim).[11]

Even assuming Mendia attempted to post bail, he offers no allegations that tie the bail bondsmen's decisions to deny his request to the actions of ICE, Garcia or Chang.[12] (*Id.*) Mendia does not, for example, insist that ICE in any way communicated with the bail bondsmen and discouraged them from posting bail for Mendia. Nor does he allege that the detainer form itself contains any language that discourages the posting of bail. Finally, Mendia's claim that ICE interfered with his right to bail is fatally undermined by his admission that, despite having the detainer lifted in January of 2008, he did not leave WCDF until July 31, 2009, when he accepted release on his own recognizance. If, as Mendia alleges, the detainer was the only thing that stood between Mendia and posting bail, then Mendia would have been able to post bail immediately after the detainer was lifted in January 2008. The fact that he did not do so highlights the fact that the ICE detainer had nothing to do with Mendia's failure to post bail.

Thus, Mendia's speculations regarding why he did not post bail do not suffice to state a

---

[11] Mendia claims to be proceeding against the *Bivens* Defendants and DHS on his FTCA claims (Causes of Action 3-8). However, it is well established that FTCA claims can be brought against only one party – the United States of America. *See, e.g., Woods v. U.S.*, 720 F.2d 1451, 1452 n.1 (9th Cir. 1983); *see also McGuire v. Turnbo*, 137 F.3d 321, 324 (5th Cir. 1998). Furthermore, The Federal Employees Liability Reform and Tort Compensation Act (commonly known as "the Westfall Act") grants federal employees absolute immunity from most damages claims arising from acts within the scope of their federal employment. *See* 28 U.S.C. § 2679(b)(1); *Osborn v. Haley*, 127 S. Ct. 881, 887 (2007); *U.S. v. Smith*, 499 U.S. 160, 163 (1991). The only two exceptions are actions brought for a violation of the Constitution or a federal statute. *See* 28 U.S.C. § 2679(b)(2); *Smith*, 499 U.S. at 166-67. Thus, so long as the alleged acts and omissions fall within the scope of the defendant's federal employment and are not based on federal constitutional or statutory law, the defendant is absolutely immune from suit. In this case, the Attorney General's designee has certified that Defendants Chang and Garcia were acting with the scope of their employment when Mendia's claims arose. (*See* Exhibit B, Certification of Scope of Employment (November 1, 2011).) As a result, Mendia's common law tort claims must be deemed an action against the United States.

[12] Defendants deny that Mendia ever attempted to post bail. *See* supra n 3. Furthermore, Mendia's claim presupposes a "constitutional right to unconditional release on bail upon which a due process violation can be based." While Defendants attempt to respond in kind, they in no way concede this point. *Nasious*, 657 F. Supp 2d at 1223 (citing *U.S. v. Salerno*, 481 U.S. 739, 754-55 (1987); *Faheem-El v. Klincar*, 841 F.2d 712, 719 (7th Cir. 1988)).

claim. *Iqbal*, 129 S. Ct. at 1949 ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")  Therefore, the Court should dismiss Mendia's claim for interference with his Eighth Amendment right to bail under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 4. Mendia has failed to state a claim for false imprisonment because he was never imprisoned by the Defendants (Fourth Claim).

In California, false imprisonment consists of "nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short." *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 703 (1994).  Here, Mendia's false imprisonment claim fails because Mendia was never confined by Garcia, Chang or DHS.  Every court to have looked at the issue has concluded that an immigration detainer does not constitute federal custody.  *See, e.g., Garcia v. Taylor*, 40 F.3d at 303-04.  Furthermore, Mendia clearly alleges that ICE lifted the detainer *before* Mendia was released from state custody and thus the detainer never became operational. (FAC ¶¶ 45.)  When the state authorities released Mendia from state custody, he was no longer in the custody of any agency, and at no point was he ever transferred to federal immigration custody.  Likewise, Mendia's theory of the "chilling effect" that the detainer had on his ability to post bail cannot state a claim for false imprisonment because Mendia admits that he was actually free to leave without bail on his own recognizance.  (FAC ¶ 56.)  Likewise, Mendia cannot plausibly argue that he was falsely imprisoned by a detainer when he "chose" to stay in custody for a full 1.5 years after the detainer was lifted.  (FAC ¶ 45, 91.)  Accordingly, the Court should dismiss Mendia's claim for false imprisonment under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 5. Mendia has failed to state a claim for malicious prosecution (Fifth Claim).

In his Fifth Cause of Action, Mendia alleges that the ICE detainer amounts to malicious prosecution because placing the detainer without probable cause and later "abandon[ing]" it amounts to a "de facto" administrative proceeding.  (FAC ¶ 63.)  Mendia further alleges that the detainer was placed with "malice."  (*Id.* ¶ 63.)

As important as the facts Mendia alleges are those he does not allege. Notably, Mendia does not allege that he provided ICE with "affirmative proof" of his citizenship until his "chance" encounter with Garcia on January 8, 2008. (FAC ¶ 42.) Mendia also does not allege to have been born in the United States, and concedes that he was not. (FAC ¶ 27.) Furthermore, Mendia alleges no facts to support the contention that ICE acted with malice and without probable cause in issuing the immigration detainer.

In California, a malicious prosecution claim may arise from the pursuit of either judicial or administrative proceedings. *Hardy v. Vial*, 48 Cal. 2d 577 (1957). To state a claim for malicious prosecution, a plaintiff must prove that the underlying prosecution: "(1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice." *Sheldon Appeal Co. v. Albert & Oliker*, 47 Cal. 3d 863 (1989). Here, Mendia fails to satisfy all three requirements. First, the detainer did not constitute a judicial or administrative prosecution, nor was the detainer "pursued to legal termination" in Mendia's favor. Rather than an administrative or a judicial process, the detainer reflected ICE's attempt to ensure that, in the event Mendia was to be released from jail, ICE would have an opportunity "to determine whether [Mendia] is subject to removal from the United States." (*See* FAC, Exhibit 1.) Furthermore, ICE immediately removed the detainer once Mendia provided ICE with affirmative proof of his U.S. citizenship. (FAC ¶¶ 42-43, 45.)

Second, Mendia's birth outside the United States, and his failure to provide "affirmative proof" of citizenship when first questioned by ICE, would have given ICE sufficient probable cause to suspect that he was not a U.S. citizen. *See Martinez-Madera*, 559 F.3d at 940; *Murphy*, 54 F.3d 605 (holding that once the government establishes that an individual was born in a foreign country, a presumption of alienage is created, and the burden shifts to the foreign-born individual, to prove his or her right to remain in the United States). Thus, ICE had probable cause to place the detainer on June 15, 2007.[13] Finally, as to the third requirement, aside from a

---

[13] Defendants do not concede that they had to have probable cause to issue Mendia's detainer. *See* supra fn. 8.

"formulaic recitation" of "malice," Mendia's complaint is devoid of any facts supporting this third element of malicious prosecution. *Iqbal*, 129 S. Ct. at 1949-50. Therefore, Mendia has failed to state a claim for malicious prosecution.

Accordingly, the Court should dismiss Mendia's claims for malicious prosecution for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 6.    Mendia has failed to state a claim for abuse of process (Sixth Claim)

Mendia claims that Defendants committed the tort of abuse of process when they issued an immigration detainer despite the fact that he had yet to be "convicted of any crime and was under no sentence." (FAC ¶ 64.) Under California law, Mendia must establish two elements to prevail in an action for abuse of process: that the defendant "(1) contemplated an ulterior motive in using the process; and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings." *Brown v. Kennard*, 94 Cal. App. 4th 40, 44 (Cal. Ct. App. 2001). More fundamentally, the essence of the tort 'abuse of process' lies in the misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice." *Meadows v. Bakersfield Sav. & Loan Ass'n*, 250 Cal. App. 2d 749, 753 (1967). In other words, abuse of process is shown where a defendant acts in a manner not authorized by the process or if the defendant's actions are aimed at an objective that is not a legitimate use of the process. *Spellens v. Spellens*, 49 Cal. 2d 210, 232 (1957).[14]

In this case, ICE's issuance of a detainer, with no subsequent action to assume physical custody of Mendia, did not involve any court, and is not a proceeding that resembles those in which abuse of process claims have been analyzed by the courts. Even if the issuance of a detainer, without more, could be actionable for abuse of process, there is no evidence nor are there allegations to suggest that the detainer was precipitated by an ulterior motive or aimed at an objective that was illegitimate. (FAC ¶¶ 64-65.) Nor can Mendia's conclusory allegations of

---

[14]    *Spellens* found that abuse of process "usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort." 49 Cal.2d at 232-233.

racial profiling amount to a plausible claim of "ulterior motive." *See Iqbal*, 129 S. Ct. at 1949.

Therefore, the Court should dismiss Mendia's claims for malicious prosecution for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 7. Mendia has failed to state a claim for negligence (Seventh Claim).

In his Seventh Cause of Action, Mendia mechanically recites the threadbare elements of negligence, insisting that Defendants negligently violated his right to bail, as well as his due process and equal protection rights. (FAC ¶¶ 67, 99-100.) Mendia likewise mechanically recites that Defendants negligently caused him to suffer various torts like false imprisonment and malicious prosecution. (*See e.g., Id.* ¶¶ 67(e) and 67(h).) In California, actionable negligence requires proof of the following elements: (1) legal duty to use due care; (2) breach of such legal duty; and (3) the breach as the proximate or legal cause of a resulting injury. *See Sakiyama v. AMF Bowling Centers, Inc.*, 110 Cal. App. 4th 398, 405 (2003). While Mendia attempts to plead the "threadbare" elements of a claim for negligence "in anticipation of Defendants [sic] 'Motion to Dismiss' [sic] pursuant to Rule 12.(b)(6) [sic] of the Federal Rules of Civil Procedure," such "[t]hreadbare recitals of the elements" of a negligence claim, and are "not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1949-50.

As to the first element - duty - "the general rule is that all persons have a duty to use ordinary care to prevent others from being injured as the result of their conduct." *Conte v. Wyeth, Inc.*, 168 Cal. App. 4th 89 (Cal. Ct. App. 2008) (citing Cal. Civ. Code § 1714(a).) The threshold element of the existence of duty is a question of law to be resolved by the court. *Artiglio v. Corning Inc.*, 18 Cal. 4th 604, 614 (Cal. 1998). Duty "is not an immutable fact of nature but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." *Ballard v. Uribe*, 41 Cal. 3d 564, 572 n 6, (1986). Here, a duty does not automatically arise between Defendants and Mendia because, under California law, a person is under no legal duty to aid another unless there is a "special relationship" between them. A special relationship will not arise based on a person's membership in a particular class, but because a public entity voluntarily assumes a duty towards a particular person. *Rombalski v. City of Laguna Beach*, 213 Cal. App. 3d 842, 853 (Cal. App.

Ct. 1989.)  Mendia has presented no evidence nor allegation to support the argument that

Defendants voluntarily assumed a specific duty to him above the general protection offered to all

aliens in state custody.  Thus, no special relationship existed between Mendia and Defendants to

support a negligence claim and the Court should dismiss this claim for relief.

Furthermore, an individual breaches his duty of care when he fails "to exercise the degree

of care in a given situation that a reasonable person under similar circumstances would employ to

protect others from harm."  *City of Santa Barbara v. Superior Ct.*, 41 Cal. 4th 747, 753-54 (Cal.

2007).  While Mendia mechanically pleads a breach of duty, this allegation is conclusory and

cannot sustain a claim of negligence.  (FAC ¶ 67.)  In fact, under Mendia's allegations,

Defendants properly carried out, rather than breached, any duty toward him.  As explained above,

Mendia does not allege to have been born in the United States (and as such he is presumed to be

an alien, until proven otherwise).  *See Martinez-Madera*, 559 F.3d at 940; *Murphy v. INS*, 54

F.3d 605 (9th Cir. 1995).  Thus, until provided with "affirmative proof" to the contrary, it was

reasonable for ICE to assume that Mendia was an alien.  According to Mendia, once he provided

Agent Garcia with affirmative proof of his U.S. citizenship, Agent Garcia removed the detainer.

(FAC ¶¶ 42, 45.)  This conduct does not amount to a breach of duty, but is in fact proper and

lawful.  Therefore, the Court should dismiss Mendia's claim for negligence based on his failure

to adequately state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**8.      Mendia fails to state a claim for Infliction of Emotional Distress (Eighth Claim).**

**a.  Negligent Infliction of Emotional Distress**

Mendia alleges that the immigration detainer ICE placed upon him caused him

"prolonged anxiety, chronic depression, periods of acute depression, mood swings, reoccurring

nightmares about being deported to Mexico, and other like emotional trauma."  (FAC ¶ 69.)  In

California, there is no independent tort of negligent infliction of emotional distress.  *See Potter v.

Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984-85 (1993).  Negligent infliction of emotional

distress is merely a form of the tort of negligence, requiring a plaintiff to set forth each of the

elements of negligence: (1) duty; (2) negligent breach of duty; (3) legal cause; and (4) damages

caused by the negligent breach.  *See Huggins v. Longs Drug Stores California, Inc.*, 6 Cal. 4th

124, 129 (1993); *Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 463 (2003).  Thus, the

elements for a cause of action for negligent infliction of emotional distress include that the: (1)

defendant engaged in negligent conduct involving usual issues of duty and breach; (2) plaintiff

suffered serious emotional distress; and (3) defendant's conduct was a substantial factor in

causing the emotional distress suffered by plaintiff.  *See Burgess v. Superior Ct.*, 2 Cal. 4th 1064,

1072 (1992).  As noted above, Mendia fails to allege either duty or breach, which fails to state a

claim for negligence.  For the same reason, Mendia does not state a claim for negligent infliction

of emotional distress.  Therefore, the Court should dismiss Mendia's claim for negligent

infliction of emotional distress based on his failure to state a claim under Rule 12(b)(6) of the

Federal Rules of Civil Procedure.

### b.  Intentional Infliction of Emotional Distress

Based on the same allegations of fear of "deportation" and "confinement" as above,

Mendia claims, in the alternative, that Defendants intentionally caused him emotional distress by

placing and immigration detainer upon him despite his U.S. citizenship.  (FAC ¶¶ 71, 101.)  To

state a claim for intentional infliction of emotional distress, a plaintiff must allege "outrageous

conduct," which caused him "severe emotional distress."  *Cole v. Fair Oaks Fire Protection

Dist.*, 43 Cal. 3d 148, 155 (1970).  Mendia fails to state a claim for intentional infliction of

emotional distress because his allegations do not make out a claim of "outrageous conduct" nor

do his allegations rise to the level of "severe emotional distress."

The elements of a cause of action for intentional infliction of emotional distress ("IIED")

in California are: (1) extreme and outrageous conduct by defendant; (2) intention to cause or

reckless disregard of the probability of causing emotional distress; (3) severe emotional

suffering; and (4) actual and proximate causation of the emotional distress.  *Cole*, 43 Cal. 3d at

155.  To make out a claim for IIED, the Mendia must prove that his emotional distress was

severe and not trivial or transient.  *Fletcher v. W. Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376, 397

(1970).  Severe emotional distress means "emotional distress of such substantial quality or

enduring quality that no reasonable [person] in civilized society should be expected to endure it."

*Potter*, 6 Cal. 4th at 1004.

The severity of emotional distress required to establish a claim of IIED is illustrated by *Hughes v. Pair*, 46 Cal. 4th 1035 (2009).  There, the plaintiff sued a trustee for intentional infliction of emotional distress, alleging that he made sexually explicit, offensive, and threatening comments, in effect, demanding sex if she wanted her request for funds from the trust to be granted.  *Id.* at 1040.  In upholding summary judgment against the plaintiff, the court concluded that the plaintiff's allegations that "she has suffered discomfort, worry, anxiety, upset stomach, concern, and agitation" as a result of the defendant's conduct "do not comprise emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it."  *Id.* at 1051.

In this case, Mendia claims that the detainer caused him to believe that he would be confined in a federal facility and deported, which in turn caused him to suffer "severe emotional distress."  This alleged " emotional distress" based on a subjective belief was unreasonable in light of: (1) Mendia's alleged "affirmative proof" of U.S. citizenship; and (2) the fact that the detainer had never resulted in ICE custody.  Furthermore, assuming Mendia suffered distress, he provides no facts that would allow the Court to conclude that his "distress" – however unreasonable – was in fact severe.   Thus, Mendia's allegations do not even approach California's standard for establishing "severe emotional distress" in a claim of IIED.

Likewise, Defendants' alleged wrongful issuance of a detainer is not the kind of conduct that rises to the level of  "outrageous conduct" required under California law.  "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community. The defendant must have engaged in conduct intended to inflict injury or engaged in with the realization that injury will result."  *Potter*, 6 Cal. 4th at 1001 (internal citation omitted).  Under Mendia's own allegations, Defendants' conduct was not only *not* "outrageous," but was in fact quite reasonable.  As explained above, Mendia does not allege to have been born in the United States and as such he is presumed to be an alien, until proven otherwise.  *See Martinez-Madera*, 559 F.3d at 940;  *Murphy*, 54 F.3d 605.  Thus, until provided with "affirmative proof" to the contrary, ICE reasonably assumed that Mendia was an alien. (FAC ¶

42.) According to Mendia, once he provided Garcia with affirmative proof of his U.S. citizenship, Garcia removed the detainer. (*Id.* ¶ 45.) Therefore, Mendia has failed to allege outrageous conduct and the Court should dismiss this claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## CONCLUSION

Each of Mendia's eight causes of action against Garcia, Chang, and DHS fail because Mendia lacks standing to raise them. This is because the allegedly erroneous detainer did not place in Mendia in ICE custody nor did it interfere with his ability to post bail. The Court's jurisdiction over Mendia claims is also bared by 8 U.S.C. § 1252(g) because these claims arise out of ICE's discretionary decision to commence removal proceedings. Mendia's claims against Agents Chang and Garcia are also barred by the doctrine of qualified immunity. Finally, none of Mendia's claims are based on cognizable legal theories or plausible factual allegations. Thus, even assuming jurisdiction, the Court should dismiss each of Mendia's causes of actions for failure to state a claim. Therefore, this Court should dismiss all of Mendia's claims against DHS and Garcia and Chang under Rules 12(b)(1) and 12(b)(6).

DATED: November 2, 2011                    Respectfully submitted,


                                           TONY WEST
                                           Assistant Attorney General, Civil Division

                                           DAVID J. KLINE
                                           Director, Office of Immigration Litigation, District
                                           Court Section

                                           JEFFREY S. ROBINS
                                           Assistant Director

                                By:        _____/s/_____
                                           LANA L. VAHAB
                                           Trial Attorney

                                           *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on November 2, 2011, I electronically filed the foregoing **DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** with the Clerk of
Court.  I also caused a copies of the foregoing **DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT** to be served upon Plaintiff, Bernardo
Mendia, by placing them in an envelope which was subsequently sealed and forwarded to the
mail room of the United States Department of Justice for the addition of the correct amount of
first-class postage and same-day delivery to a United States Post Office in Washington, D.C.
The envelope was addressed as follows:

**Bernardo Mendia**
**P.O. Box 28032**
**Oakland, CA 94604**

*/s/ Lana L. Vahab*
LANA L. VAHAB
Trial Attorney