UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| BERNARDO MENDIA,<br><br>               Plaintiff,<br>v.<br>JOHN M. GARCIA, et al.,<br>               Defendants.<br>_____/ | No. C 10-3910 MEJ<br><br>**ORDER RE: DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**Re: Docket No. 34** |

Before this Court is John Garcia's and Ching Chang's ("Defendants") Motion to Dismiss Bernardo Mendia's ("Plaintiff") First Amended Complaint. Dkt. No. 34. For the reasons set forth below, the Court GRANTS Defendants' motion.

**BACKGROUND**

The following background is taken from Plaintiff's First Amended Complaint ("FAC"), filed on August 11, 2011. Dkt. No. 28.

Plaintiff was born in Mexico in 1972. FAC ¶¶ 8, 27. He derived United States citizenship from his mother in 1987, when he was 15 years old. *Id.* ¶ 27. Defendants are Immigration and Customs Enforcement ("ICE") officers. *Id.* ¶ 25.

On May 9th, 2007, Plaintiff was detained in the West County Detention Facility ("WCDF") in Contra Costa County, California, where bail was set on his state charges. *Id.* ¶ 18. According to Plaintiff, he was questioned by Defendants on June 15, 2007, shortly after being processed at WCDF. *Id.* ¶ 25. At the time, Plaintiff believed that Defendants were further investigating his state charges. *Id.* ¶ 26. During the conversation, Plaintiff claims he provided Defendants with the following facts: he was a United States citizen, had a valid social security number, had a United States passport issued in 1997, and that his mother was a United States citizen. *Id.* ¶ 27. The record,

however, does not indicate whether Plaintiff provided Defendants with any identifying documentation during the interview.[1] After making these statements, Plaintiff instructed Defendants to seek out his attorney at the Contra Costa Public Defender for all other questions. *Id.* ¶ 28.

ICE subsequently issued a detainer hold for Plaintiff on June 16, 2007. *Id.*, Ex. 1. ICE sent an I-247[2] Immigration Detainer form to WCDF, putting the facility on notice that ICE was initiating an investigation to determine if Plaintiff was subject to removal. *Id.* Pursuant to 8 C.F.R. § 287.7, the I-247 form provides that WCDF should contact ICE as far in advance as possible regarding Plaintiff's release. *Id.*

Six months after Defendants interviewed Plaintiff, ICE dropped the detainer, on January 28, 2008. *Id.*, Ex. 2. During the six-month period the detainer was active, ICE did not commence removal proceedings and there is no record of ICE having contact with Plaintiff.

Ultimately, it is unclear whether Plaintiff was aware that ICE had dropped the detainer.[3] On one hand, Plaintiff claims that ICE dropped the detainer as a result of his chance encounter with Defendant Garcia at the WCDF facility on January 28, 2008. FAC ¶¶ 41-43. During this second encounter with Defendant Garcia, Plaintiff claims he gave Garcia affirmative proof of his United States citizenship, and this was the reason ICE dropped the detainer that same day. *Id.* ¶¶ 42, 45. However, Plaintiff also claims that he did not know ICE had dropped the detainer on January 28, 2008. Defs.' Mot. to Dismiss, Ex. A. In a letter written to ICE Associate Counsel Erik Gantzel,

---

[1] Although Plaintiff possesses a driver's license and social security card, the Court notes that these identification cards were issued in 2009, approximately two years after Plaintiff's initial interview with Defendants. FAC, Exs. 4, 5; FAC ¶ 25.

[2] A Form I–247 is an Immigration Detainer, or a Notice of Action. A detainer serves to advise another law enforcement agency that the Department of Homeland Security ("DHS") seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the DHS, prior to release of the alien, in order for the DHS to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible. *See* 8 C.F.R. § 287.7.

[3] ICE regulations do not require that the detention facility notify the detainee that the detainer has been dropped. *See* 8 C.F.R. § 287.7.

Plaintiff wrote that he believed the ICE detainer was active until he was released in 2009 on his own recognizance.[4] *Id.* Other than the two encounters with Defendants, which occurred approximately six months apart, Plaintiff does not identify any other contact with Defendants or other ICE officers.

Plaintiff remained in detention on state charges at WCDF for another eighteen months after ICE dropped the detainer, until the Alameda County Court released Plaintiff on his own recognizance on July 31, 2009. *Id.* ¶¶ 18, 53, 59. Notably absent from the record is any indication that Plaintiff or his counsel at the Contra Costa County Public Defender's office attempted to contact ICE regarding Plaintiff's status as a United States citizen while the detainer was active. According to Plaintiff, even after providing affirmative proof to one of the Defendants on January 28, 2008, he remained in detention for another eighteen without seeking bail or release from the court. *Id.* ¶ 42; Defs.' Mot. to Dismiss 4:5-6.

Plaintiff filed his initial Complaint in this matter on August 31, 2010. Dkt. No. 1. Because he was out of custody, Plaintiff was not seeking *habeas*; instead, he claimed that his constitutional rights were violated as a result of the immigration detainer. *See* Pl.'s Compl. ¶¶ 30-38.

On August 15, 2011, Plaintiff filed his First Amended Complaint. Dkt. No. 28. Plaintiff pleads eight causes of action, all of which are predicated upon Plaintiff's theory that he was "constructively detained" at WCDF because of the immigration detainer. FAC ¶¶ 35, 38, 54, 60, 90. Plaintiff claims the ICE detainer caused him an injury because it prohibited him from being released on his own recognizance and posting bail through a bail bondsman. *Id.* ¶¶ 18-21, 35, 37, 38. Because Defendants issued the detainer, Plaintiff brings a *Bivens*[5] action against them, claiming

---

[4] Plaintiff wrote a letter to Mr. Gantzel in February and March 2010, almost a year after he had been released. Defs.' Mot. to Dismiss, Ex. A. In the March 2010 letter, Plaintiff wrote that he "began investigating how a bail bond would have been posted in this particular situation on which the claim centers." *Id.* After speaking with immigration attorneys about the issue, Plaintiff also wrote that had he sought bail while the ICE detainer was active, "[n]o bail bond agent would ever post bail for a pretrial detainee who has an immigration detainer . . . ." *Id.*

[5] In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court held that injured plaintiffs can bring a cause of action for damages against federal officers based on violations of their constitutional rights.

3

they violated his constitutional rights of due process, equal protection, and right to bail. *Id.* ¶¶ 77-92. Finally, Plaintiff also brings five additional Federal Tort Claims actions against Defendants, including false imprisonment, malicious prosecution, abuse of process, negligence, and negligent infliction of emotional distress.[6] *Id.* ¶¶ 93-102. Consequently, Plaintiff is seeking over $119,000,000 in damages against Defendants for his injuries. *Id*. at 28:17-26.

On November 3, 2011, Defendants filed their Motion to Dismiss. Dkt. No. 34. Plaintiff filed his Opposition to Defendants' Motion to on January 12, 2012, Dkt. No. 40, and Defendants filed a reply on January 31, 2012, Dkt No. 49. On February 2, 2012, this Court vacated the noticed hearing date pursuant to Civil Local Rule 7-1(b), as it found that the matter suitable for disposition without oral argument. Dkt. No. 50.

**DISCUSSION**

In their motion, Defendants argue that this Court should dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) because it lacks subject matter jurisdiction over his claims. *See* Fed R. Civ. P. 12(b)(1); Defs.' Mot. to Dismiss 1:16-17. Specifically, Defendants argue that Plaintiff's "'injur[ies]' and their alleged 'causation' are not 'constitutionally sufficient' to meet the Article III standing requirement." Defs.' Mot. to Dismiss 8:3-4. Furthermore, Defendants argue that, even if Plaintiff establishes subject matter jurisdiction, this Court should dismiss his claim because he fails to state a claim upon which relief can be granted. Fed R. Civ. P. 12(b)(1); Defs.' Mot. to Dismiss 2:2-4. In particular, Defendants argue that Plaintiff's constitutional, common law, and state law tort claims are unsupported by any plausible allegations. Defs.' Mot. to Dismiss 2:1-3.

In his Opposition, Plaintiff claims this Court does have subject matter jurisdiction because he suffered an injury of "constructive detainment" – "the inability to utilize the services of bail bondsman and henceforth secure his pre-trial release." Pl.'s Opp. to Defs.' Mot. to Dismiss 6:5-6. As such, Plaintiff claims "[i]t is wholly plausible that had it not been for the immigration detainer

---

[6] On June 15, 2009, Plaintiff filed a time Federal Tort Claims Act ("FTCA") with the DHS. The claim was denied on March 1, 2010. FAC ¶ 74.

4

that the Plaintiff would have secured his pre-trial release . . . ." *Id.* at 7:2-3.

Because the Court finds Defendants' jurisdiction argument dispositive, it turns to it first.

**A.     Legal Standard**

A court should grant a motion to dismiss pursuant to Rule 12(b)(1) if it lacks subject matter jurisdiction over the Plaintiff's suit. Fed. R. Civ. P. (12)(b)(1). The party seeking to invoke the jurisdiction of the District Court has the burden of establishing that jurisdiction exists. *Tosco Corp. v. Communities for a Better Env't*, 236, F.3d 495, 499 (9th Cir. 2001). The court is under a continuing duty to dismiss an action whenever it appears that it lacks jurisdiction. *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 687 (9th Cir. 2003).

On a motion to dismiss pursuant to Rule 12(b)(1), the applicable standard turns on the nature of the jurisdictional challenge. A Rule 12(b)(1) jurisdictional attack may be "facial" or "factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In evaluating a facial attack on jurisdiction, the Court must accept the factual allegations in Plaintiff's complaint as true and draw all reasonable inferences in his favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *Safe Air for Everyone*, 373 F.3d at 1039. "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* (citation omitted).

**B.     Application To The Case At Bar**

In their motion, Defendants argue that this Court lacks subject matter jurisdiction because Plaintiff's "constructive detention" theory "does not accord him standing to bring his claims." Defs.' Mot. to Dismiss 7:18-19, 8:1-2. Ultimately, Defendants claim that Plaintiff failed to allege facts sufficient to show that they caused Plaintiff an injury in fact. *Id.* at 6:13-14.

In his Opposition, Plaintiff claims he was injured because the "mere fact that the Plaintiff had an immigration detainer placed upon him . . . prohibited his pre-trial release to which he was entitled to since the Plaintiff was under no sentence." Pl.'s Opp. to Defs.' Mot. to Dismiss 5:28, 6:1.

The core component of standing is an essential and unchanging part of the case-or-

controversy requirement of Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, (1992). In order to establish standing, the Plaintiff must show: "(1) an 'injury in fact,' such as an invasion of a legally protected interest; (2) 'a causal connection between the injury and the conduct complained of;' and (3) that it is 'likely' that a favorable decision will redress the injury." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (quoting *Lujan*, 504 U.S. at 560 (1992)).

To satisfy the elements of Article III standing, Plaintiff must have suffered an "injury in fact," which is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560. Furthermore, the injury must be "fairly traceable to the challenged action . . . and not the result of the independent action of some third party not before the court." *Bennett v. Spear*, 520 U.S. 154, 167 (1997).

Here, to establish Article III standing, Plaintiff must show that the immigration detainer issued by Defendants caused him an injury of "constructive detention." Because Defendants' motion is a facial attack on Plaintiff's standing, this Court will accept Plaintiff's allegations in his FAC as true. *See Holy See*, 557 F.3d at 1073.

A detainer is "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent." *Fex v. Michigan*, 507 U.S. 43, 44 (1993). Filing an immigration detainer can be done by any person who has authority to take a prisoner into custody. 8 C.F.R. § 287.7. However, the Ninth Circuit has held that a "bare detainer letter alone does not sufficiently place an alien in . . . custody to make *habeas corpus* available." *Garcia v. Taylor*, 40 F.3d 299, 303 (9th Cir. 1994). Moreover, almost all of the circuit courts considering the issue have determined that the lodging of an immigration detainer, without more, is insufficient to render someone in custody.[7] Other judges in this district have made the same determination.[8]

---

[7] *See Zolicoffer v. U.S. Dep't of Justice*, 315 F.3d 538, 541 (5th Cir. 2003); *Galaviz-Medina v. Wooten*, 27 F.3d 487, 493 (10th Cir. 1994); *Prieto v. Gluch*, 913 F.2d 1159, 1162-64 (6th Cir.

However, in these cases, the plaintiffs were seeking *habeas* from the court. Here, Plaintiff is not seeking *habeas* and is no longer in state custody. *See* FAC ¶¶ 18, 53. However, because Plaintiff's injury turns on the issue of his custodial status, these cases are persuasive in determining this Court's jurisdiction over the matter.

The Court also notes that other courts have applied this custody analysis to *Bivens* actions outside the *habeas* context. The facts here are similar to *Nasious v. Two Unknown B.I.C.E. Agents at Arapahoe Cnty. Justice Ctr.*, 657 F. Supp. 2d 1218, 1221 (D. Colo. 2009), *aff'd sub nom. Nasious v. Two Unknown B.I.C.E. Agents*, 366 F. App'x 894 (10th Cir. 2010). In *Nasious*, a *pro se* plaintiff brought a *Bivens* action against an ICE agent, alleging that the agent violated his due process rights when the agent lodged an immigration detainer against him. Similar to the present case, the detainee in *Nasious* was in state detention on criminal charges. *Id.* at 1224. The ICE agent issued a detainer against the plaintiff believing that he was Greek. *Id.* at 1221. Approximately eight months later, the agent withdrew the detainer upon information that the plaintiff was a United States citizen. *Id.* Even though the plaintiff did not bring a *habeas* claim, the court in *Nasious* concluded that, because "there was no final deportation order issued . . . [and] there was no effort by ICE to establish physical custody after he served his current prison term," the detainee was never in ICE custody. *Id.* at 1231. Consequently, the court found the plaintiff was not in the actual custody of ICE. *Id.* at 1230.

Here, the detainer lodged against Plaintiff served only as notice to WCDF that Defendants commenced an investigation to determine if Plaintiff was subject to removal proceedings. FAC, Ex. 1. The form requested that WCDF authorities notify ICE prior to Plaintiff's release, including if

---

1990); *Orozco v. INS*, 911 F.2d 539, 541 (11th Cir. 1990); *Campillo v. Sullivan*, 853 F.2d 593, 595 (8th Cir. 1988); *but see Vargas v. Swan*, 854 F.2d 1028, 1032-33 (7th Cir. 1988) (holding that a detainer could, in particular circumstances, be sufficient to satisfy the custody requirement).

[8] *See Hung Vi v. Alcantar*, 2008 WL 928340 (N.D. Cal. Apr. 4, 2008); *Mitchell v. Gonzales*, 2007 WL 2688693 (N.D. Cal. Sept. 12, 2007) *aff'd sub nom. Mitchell v. Mukasey*, 278 F. App'x 714 (9th Cir. 2008); *Nguyen v. United States*, 2003 WL 1343000 (N.D. Cal. Mar. 13, 2003); *Ishmat v. I.N.S.*, 2001 WL 725362 (N.D. Cal. June 14, 2001).

7

1  Plaintiff posted bail. *Id.* For the six months the detainer was active, ICE did not formally
2  commence deportation proceedings or issue a deportation order against Plaintiff. Plaintiff remained
3  in state custody for the six months that the detainer was active, and Defendants ultimately removed
4  the detainer on January 28, 2008, upon information that Plaintiff was a United States citizen. FAC ¶
5  42. Still, eighteen months after the detainer was dropped, Plaintiff remained in state custody at
6  WCDF. *Id.* ¶ 53. The Court also notes that there was no effort by ICE to establish physical custody
7  of Plaintiff after he was released from detention at WCDF. *See*, *e.g.*, FAC ¶ 54.

8  Based on the evidence before it, this Court finds that the lodgement of the detainer by
9  Defendants, without something more, does not constitute ICE custody. *Garcia*, 40 F.3d at 303; *see*
10 *also Nasious* 657 F. Supp. 2d at 1230. Because Plaintiff was never in the actual custody of ICE, the
11 immigration detainer did not cause him to be "constructively detained." Instead, Plaintiff was in
12 custody of the state throughout his pre-trial detention at WCDF. As a result, Plaintiff has not shown
13 an injury that is "constitutionally sufficient" to meet the Article III standing.

14 Without showing that Defendants' actions caused his injury, Plaintiff cannot establish the
15 Article III standing necessary for this Court to hear his claims. Consequently, this Court grants
16 Defendants motion pursuant to Rule 12(b)(1).

## CONCLUSION

18 Because it lacks subject matter jurisdiction over Plaintiff's claims, this Court grants
19 Defendants' motion to dismiss Plaintiff's claims pursuant to Rule 12(b)(1). The Clerk of Court shall
20 close the file.

21 **IT IS SO ORDERED**

23 Dated: March 20, 2012                                    _____
24                                                          Maria-Elena James
                                                            United States Magistrate Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

BERNARDO MENDIA,

        Plaintiff,

  v.

JOHN M. GARCIA et al,

        Defendant.

Case Number: CV10-03910 MEJ

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 20, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Bernardo Mendia
P.O. Box 28032
Oakland, CA 94604

Dated: March 20, 2012

        Richard W. Wieking, Clerk
        By: Brenda Tolbert, Deputy Clerk

9