1

2

3

4                           UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7   BERNARDO MENDIA,                          Case No.  10-cv-03910-MEJ

            Plaintiff,
8                                             **ORDER RE: MOTION FOR LEAVE TO**
                                              **FILE AMENDED COMPLAINT AND**
9       v.                                    **MOTIONS TO DISMISS**

10  JOHN M. GARCIA, et al.,                   Re: Dkt. Nos. 87, 90, 101

            Defendants.
11

12

13                                 **INTRODUCTION**

14          Pending before the Court is Plaintiff Bernardo Mendia's ("Plaintiff") Motion for Leave to

15  File a Third Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a).  Mot. to Am.,

16  Dkt. No. 101.  Defendants John M. Garcia, Ching Chang, and the United States of America

17  (collectively, "Defendants") filed an Opposition (Dkt. No. 102), and Plaintiff filed a Reply (Dkt.

18  No. 103).  Before Plaintiff filed his Motion for Leave to Amend, Defendants sought to dismiss the

19  Second Amended Complaint ("SAC," Dkt. No. 70).  *See* United States and Official-Capacity

20  Defendants' Motion to Dismiss ("U.S. MTD"), Dkt. No. 87; Individual Agent Defendants' Motion

21  to Dismiss ("Agents MTD"), Dkt. No. 90.[1]  Plaintiff filed Oppositions to those Motions to

22  Dismiss.  Dkt. Nos. 97-98.  However, the parties did not complete briefing as to the Motions to

23  Dismiss, because—with the Court's permission—Plaintiff filed the instant Motion to file his Third

24  Amended Complaint.  *See* Dkt. No. 100.  Having considered the parties' positions, relevant legal

25  authority, and the record in this case, the Court rules as follows.

26  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

27  [1] Plaintiff sues the agents in their official capacities as well as their personal capacities.  Second
    Am. Compl., Dkt. No. 70.  Accordingly, Defendants have filed two separate motions to dismiss,
28  one representing the United States and the agents' in their official capacity liability (U.S. MTD)
    and another representing the agents in their personal capacity liability (Agents MTD).

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**BACKGROUND**

**A.     Factual Background**

The following factual background is taken from Plaintiff's SAC.  Dkt. No. 70.  Plaintiff acquired derivative United States citizenship in 1987.[2]  *Id.* ¶ 10.  On May 9, 2007, Plaintiff was arrested and charged with financial crimes, at which time he sought the assistance of a bail bondsman to secure his release from pretrial detention.  *Id.* ¶¶ 19-20, 26-27.  On June 15, 2007, Garcia and Chang, agents of Immigration and Customs Enforcement ("ICE"), interviewed Plaintiff, ostensibly selecting him for questioning because he is foreign-born.  *Id.* ¶¶ 28-29.  Plaintiff informed Chang that he was a United States citizen, gave his full social security number, and stated he had a United States passport issued in 1997.  *Id.* ¶ 40.  Plaintiff proceeded to invoke his Fifth Amendment right to remain silent, to which Garcia allegedly said something to the effect of "Oh! You don't want to talk?" and "We'll see if you want to talk when we're deporting your ass!"  *Id.* ¶¶ 42-43, 47.

Chang placed an immigration detainer[3] on Plaintiff that same day.  *Id.* ¶ 47; *see* Req. for Judicial Notice ("RJN"), Ex. C, Dkt. No. 85.  The detainer stated ICE had initiated an investigation to determine whether Plaintiff was subject to removal.  *Id.*  Plaintiff alleges the immigration detainer "dissuaded all bail bondsmen [from] conduct[ing] business with Plaintiff[,]" and he was thus unable to obtain a bail bond.  SAC ¶¶ 53, 55-57.

On January 8, 2008, Garcia issued a second detainer.  RJN, Ex. D.  This detainer was stamped with the words "Drop Hold" and was marked "Please cancel the detainer previously placed by this Service on 06-15-2007."[4]  *Id.*  Plaintiff alleges he was not aware the detainer had

---

[2] Though not stated in the SAC, the First Amended Complaint explains he acquired U.S. citizenship from his mother.  Dkt. No. 28 ¶ 27.

[3] An immigration detainer advises a federal, state, or local law enforcement agency "that the Department [of Homeland Security ("DHS")] seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien."  8 C.F.R. § 287.7(a).  The detainer requests the agency notify DHS before the alien's release such that DHS can arrange to take custody over the alien.  *Id.*  In the proposed Third Amended Complaint ("Prop. TAC," Dkt. No. 101-1), Plaintiff asserts both "Chang and Garcia placed an ICE detainer on Plaintiff[,]" rather than only Chang.  Prop. TAC ¶ 46.

[4] In the proposed TAC, Plaintiff alleges that while the document stated "Drop Hold," it also contained checked boxes indicating that ICE initiated an investigation to determine whether

2

1   been cancelled until July 31, 2009, when the state court released Plaintiff on his own

2   recognizance.[5]  SAC ¶¶ 77, 82, 84.  Plaintiff refused to accept release until the court informed him

3   no detainer was in place.  *Id.* ¶ 84.

4   **B.     Procedural Background**

5         Plaintiff submitted an administrative tort claim to DHS on June 9, 2009, which the agency

6   denied on March 1, 2010.  *Id.* ¶ 3.  On August 31, 2010, Plaintiff, proceeding pro se, filed his

7   initial Complaint against Garcia and DHS.  Dkt. No. 1.  Plaintiff alleged constitutional and tort

8   claims arising out of the detainer Garcia placed on him while he was in state custody.  *Id.* ¶¶ 11-

9   15.  Plaintiff, still proceeding pro se, then filed his First Amended Complaint ("FAC") on August

10  11, 2011, in which he (1) added Chang as a defendant; (2) asserted claims under *Bivens v. Six*

11  *Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) for violations of his

12  constitutional rights to due process, equal protection, and right to bail; and (3) asserted claims

13  under the Federal Tort Claims Act ("FTCA") for false imprisonment, malicious prosecution, abuse

14  of process, negligence, and negligent infliction of emotional distress.  FAC ¶¶ 77-102.

15        Defendants filed a Motion to Dismiss Plaintiff's FAC (Dkt. No. 34), which the Court

16  granted on the grounds that Plaintiff lacked Article III standing (Dkt. No. 51).  Plaintiff appealed

17  the Court's dismissal of the action (Dkt. No. 52), and on April 8, 2014, the Ninth Circuit reversed,

18  holding Plaintiff could show that Defendants caused his injury and thus had standing to sue.  *See*

19  *Mendia v. Garcia*, 768 F.3d 1009 (9th Cir. 2014).

20        In the Court's December 17, 2014 Order to Set Briefing Schedule, the Court granted

21  Plaintiff 90 days to obtain new counsel and seek leave to file a second amended complaint.  Dkt.

22  No. 63.  Plaintiff timely sought leave on March 10, 2015 (Dkt. No. 64) and filed his SAC, again

23

24  Plaintiff was subject to removal and also that ICE requested Plaintiff's detention so ICE agents
25  could assume custody over him.  Prop. TAC ¶ 70.  Plaintiff contends this simply "renewed" the
    ICE detainer or otherwise failed to cancel the June 2007 detainer.  *Id.*  The Court makes no
26  findings as to the effect of the January 8 detainer.  For purposes of this Motion to Amend,
    however, the Court takes Plaintiff's allegations on their face and assumes two detainers were in
27  effect.

28  [5] Plaintiff does not allege when or how the detainer was in fact cancelled, if the January 8 detainer
    did not do so.

*United States District Court*
*Northern District of California*

proceeding pro se, on April 1, 2015 (Dkt. No. 68). As noted, Defendants then moved to dismiss Plaintiff's SAC. U.S. MTD; Agents MTD. The United States' Motion addresses Plaintiff's FTCA claims for false imprisonment and intentional infliction of emotional distress, as well as Plaintiff's declaratory relief claims for violations of his Fifth Amendment rights to equal protection and substantive due process. *See* U.S. Mot. The Agents' Motion addresses Plaintiff's *Bivens* claims for violations of his Fifth Amendment rights to equal protection and substantive due process. *See* Agents Mot. Plaintiff subsequently obtained counsel (Dkt. No. 93) and filed Oppositions to Defendants' Motions (Dkt. Nos. 96, 98). Thereafter, the parties notified the Court Plaintiff intended to seek leave to file a third amended complaint. Dkt. No. 99. The Court suspended the deadline for Defendants' Replies and the hearing pending this Order. Dkt. No. 100.

In seeking leave to file a third amended complaint, Plaintiff seeks to assert 11 new claims, including (1) Federal Tort Act claims against the United States for negligence, negligent infliction of emotional distress, and abuse of process; (2) *Bivens* claims against Chang and Garcia for violations of his Fourth Amendment right against unreasonable seizure, Fifth Amendment right to equal protection, First Amendment right to freedom of speech, and Eighth Amendment right against excessive bail; and (3) claims for equitable relief under the Declaratory Judgment Act against all Defendants for violations of his First Amendment right to freedom of speech, Fourth Amendment right against unreasonable seizure, Fifth Amendment right against self-incrimination, and Eighth Amendment right against excessive bail. Prop. TAC ¶¶ 110-19, 131-54, 160-76, 183-88, 197-224. Plaintiff also seeks to add a new defendant, ICE Field Office Director Timothy Aitken. *Id.* ¶ 14; Mot. to Am. at 1. All Defendants oppose amendment.

## REQUEST FOR JUDICIAL NOTICE

All Defendants filed a Request for Judicial Notice to support their Motions to Dismiss, asking the Court to take judicial notice of the following documents: (1) Exhibit A: court records from *The People of the State of California v. Bernardo Mendia*, Case No. 1-126105-6; (2) Exhibit B: court records from the case of *The People of California v. Bernardo Mendia*, Case No. 162581; (3) Exhibit C: Immigration Detainer (stamped "Hold") dated June 15, 2007; (4) Exhibit D: Immigration Detainer (stamped "Drop Hold") dated January 8, 2008; (5) Exhibit E: Plaintiff's

United States District Court
Northern District of California

4

First Amended FTCA claim to DHS dated August 9, 2009; (6) Exhibit F: October 9, 2009 letter and supplemental materials from Plaintiff to DHS counsel in support of his FTCA claim; (7) Exhibit G: letter dated March 1, 2010 from DHS to Plaintiff, denying his FTCA claim; (8) Exhibit H: March 10, 2010 letter and supplemental materials from Plaintiff to DHS counsel; (9) Exhibit I: certification stamp affixed by the Clerk of the Superior Court of California for Alameda County. RJN, Exs. A-I, Dkt. Nos. 85-(1-24).

Plaintiff objects to Defendants' request. Dkt. No. 97. It appears, however, that Plaintiff does not contest the authenticity of the documents or their relevance, only Defendants' characterization of them. *Id.* at 1. In the Agent Defendants' Motion to Dismiss, they address "Facts for Judicial Notice," in which they summarize many of the documents in their request. This, Plaintiff contends, is argument and not appropriate for judicial notice. *Id.*

The Court may take judicial notice of matters that are either (1) generally known within the trial court's territorial jurisdiction or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). However, "[a] court may not take judicial notice of one party's opinion of how a matter of public record should be interpreted." *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004). Rather, the Court may only take judicial notice of the documents themselves. Proper subjects of judicial notice court documents already in the public record and documents filed in other courts. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Thus, courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992). Accordingly, the Court GRANTS Defendants' request for judicial notice as to Exhibits A and B as they are public court documents.

The Court may also take judicial notice of Exhibits C and D, as Plaintiff refers to the immigration detainers extensively in his SAC and proposed TAC. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the

5

document forms the basis of the plaintiff's claim."); *Sizemore v. Pac. Gas & Elec. Ret. Plan*, 939 F. Supp. 2d 987, 989 (N.D. Cal. 2013) (taking judicial notice of letters referenced in complaint); SAC ¶¶ 48, 77; Prop. TAC ¶¶ 46, 50, 57-58, 70.  Given Plaintiff's reliance on the detainers, the Court GRANTS Defendants' request as to Exhibits C and D.

The Court does not consider Exhibits E, F, G, H, and I in this Order and therefore does not take judicial notice of them at this time.

## LEGAL STANDARD

Federal Rule of Civil Procedure 15 provides that a party may amend its pleading once as a matter of course within (1) 21 days after serving the pleading or (2) 21 days after the earlier of service of a responsive pleading or service of a Rule 12(b) motion.  Fed. R. Civ. P. 15(a)(1).  Outside of this timeframe, "a party may amend its pleading only with the opposing party's written consent or the court's leave," though the court "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "Although the rule should be interpreted with 'extreme liberality,' leave to amend is not to be granted automatically."  *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citation omitted).

A court considers five factors in determining whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint."  *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (quotation omitted).  "Not all of the factors merit equal weight.  As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight.  Prejudice is the touchstone of the inquiry under Rule 15(a)."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citation omitted).  "Absent prejudice, or a strong showing of any of the remaining [] factors, there exists a *presumption* under *Rule 15(a)* in favor of granting leave to amend."  *Id.* at 1052 (emphasis in original).  "Denials of motions for leave to amend have been reversed when lacking a contemporaneous specific finding by the district court of prejudice to the opposing party, bad faith by the moving party, or futility of amendment."  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186-87 (9th Cir. 1987).

United States District Court
Northern District of California

**DISCUSSION**

**A.      Bad Faith**

Bad faith may be shown when a party seeks to amend late in the litigation process with claims which were, or should have been, apparent early.  *Bonin v. Calderon*, 59 F.3d 815, 846 (9th Cir. 1995).  Plaintiff argues his request is not brought in bad faith because he recently obtained counsel, who has helped him draft his proposed TAC and investigate other claims and defendants.  Mot. to Am. at 6.  Defendants do not argue that Plaintiff seeks to amend in bad faith, nor does the record before the Court indicate a bad faith purpose for Plaintiff's desire to amend.  As such, the Court finds Plaintiff does not seek to amend his pleading in bad faith.

**B.      Undue Delay**

"[D]elay alone no matter how lengthy is an insufficient ground for denial of leave to amend."  *United States v. Webb*, 665 F.2d 977, 980 (9th Cir. 1981); *see also Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  However, undue delay combined with other factors may warrant denial of leave to amend.  *See, e.g.*, *Jackson*, 902 F.2d at 1387-89 (holding that prejudice and undue delay are sufficient to deny leave to amend); *Morongo Band of Mission Indians*, 893 F.2d at 1079 ("delay of nearly two years, while not alone enough to support denial, is nevertheless relevant").

Defendants argue that amendment will further delay this case, which has been pending for over five years.  Opp'n to Mot. to Am. at 8.  However, much of this delay was the result of Defendants' initial motion to dismiss and Plaintiff's subsequent successful appeal to the Ninth Circuit.  Further, it was not until after he filed his SAC that Plaintiff obtained counsel, and Defendants have not shown that Plaintiff knew of the theories and legal bases for the amendments at the time he filed his prior complaints pro se.  *See Jackson*, 902 F.2d at 1388; *Johnson v. Serenity Trans., Inc.*, 2015 WL 4913266, at *5 (N.D. Cal. Aug. 17, 2015) (the undue delay "inquiry focuses on whether the plaintiff knew of the facts or legal bases for the amendments at the time the operative pleading was filed and nevertheless failed to act promptly to add them to the pleadings.").  As such, the Court finds Plaintiff's delay does not weigh against his Motion for Leave to Amend.

**C.      Prejudice to the Opposing Party**

This factor carries "the greatest weight" in whether to grant leave to amend, as "[p]rejudice is the touchstone of the inquiry under rule 15(a)." *Eminence Capital*, 316 F.3d at 1052 (quotation omitted).  "The party opposing amendment bears the burden of showing prejudice." *DCD Programs*, 833 F.2d at 187.  "A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." *Lockheed Martin Corp. v. Network Sol.*, 194 F.3d 980, 986 (9th Cir. 1999) (citing *Solomon v. North Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998)).  However, "[n]either delay resulting from the proposed amendment nor the prospect of additional discovery needed by the non-moving party in itself constitutes a sufficient showing of prejudice." *Tyco Thermal Controls LLC v. Redwood Indus.*, 2009 WL 4907512, at *3 (N.D. Cal. Dec. 14, 2009).

Defendants repeat the same argument to show prejudice as they do for undue delay: that amendment will delay litigation.  Opp'n to Mot. to Am. at 8.  They contend amendment is prejudicial because "[a]s time passes, the memories of witnesses fade, and they may become more difficult to locate, which increasingly prejudices Defendants." *Id.*  However, such generalized arguments are insufficient to meet their burden of showing prejudice.  *See In re Fritz Co. Sec. Litig.*, 282 F. Supp. 2d 1105, 1110 (N.D. Cal. 2003) (finding no prejudice because "[w]hile the fading of witnesses' memory over time and the changes to the [defendant] company could perhaps prejudice defendants, they fail to show specifically how it would do so").  Moreover, no case management deadlines have been established and discovery has not yet commenced, and therefore there is no risk Defendants will need to duplicate any prior efforts.  *Cf. Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1993) (finding prejudice where "parties ha[d] engaged in voluminous and protracted discovery" prior to amendment and "[t]rial was only two months away, and discovery was completed"); *Scognamillo v. Credit Suisse First Boston, LLC*, 587 F. Supp. 2d 1149, 1156 (N.D. Cal. 2008) (finding prejudice where plaintiffs "sought leave to amend late in litigation, approximately twelve weeks before the . . . discovery cutoff" and where the proposed theories were "a radical departure" such that "[g]ranting leave to amend at this point would require extensive additional discovery on entirely new topics and the redeposition of witnesses[.]").  As

United States District Court
Northern District of California

8

1    such, the Court finds Defendants have failed to meet their burden of establishing prejudice

2    sufficient to warrant denial of Plaintiff's Motion to Amend.

3    **D.      Previous Amendments**

4         Courts have broader discretion in denying motions for leave to amend after leave to amend

5    has already been granted. *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (citing

6    *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 879 (9th Cir. 1999)). In *Chodos*, the Ninth Circuit

7    affirmed the district court's denial of leave to amend when the party knew of the factual basis for

8    the amendment prior to a previous amendment. *Id.* Further, a party that contends it learned "new"

9    facts to support a claim should not assert a claim that it could have pleaded in previous pleadings.

10   *Edwards Lifesciences LLC v. Cook Inc.*, 2008 WL 913328, at *3 (N.D. Cal. Apr. 2, 2008) (citing

11   *Chodos*, 292 F.3d at 1003).

12        Defendants point out that Plaintiff has moved to amend his complaint following each of

13   their motions to dismiss, which they argue has resulted in delayed litigation and wasted judicial

14   resources. Opp'n to Mot. to Am. at 6. They contend "Plaintiff should not be allowed to use the

15   pleading process as a way to ferret out Defendants' defenses or attempt to work around them." *Id.*

16   Defendants further argue Plaintiff's pro se status should have no bearing since Plaintiff was not

17   incarcerated during the litigation and has had "substantial opportunity" to retain counsel. *Id.*

18        Despite Defendants' argument, "where, as here, a plaintiff files a motion to amend after a

19   defendant files a motion to dismiss, courts will still grant the motion to amend absent an

20   independent showing by the defendant of at least one of the [other] factors." *Naranjo v. Bank of*

21   *Am. Nat'l Ass'n*, 2015 WL 913031, at *6 (N.D. Cal. Feb. 27, 2015) (collecting cases). Although

22   Plaintiff has amended his complaint twice before, he made those amendments without the benefit

23   of counsel. Rather, it is in the interests of justice to allow Plaintiff, now with the guidance of his

24   new counsel, to have an opportunity to set forth his claims with more precision. Thus, absent a

25   finding that another factor weighs in favor of denying leave to amend, and given the policy of

26   permitting amendment with "extreme liberality," the Court finds this factor does not weigh against

27   granting leave to amend.

28   //

United States District Court
Northern District of California

1

**E.       Futility of Amendment**

2         "A motion for leave to amend may be denied if it appears to be futile or legally

3 insufficient.  However, a proposed amendment is futile only if no set of facts can be proved under

4 the amendment to the pleadings that would constitute a valid and sufficient claim[.]"  *Miller v.*

5 *Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citations omitted).  The standard to be

6 applied is identical to that on a motion to dismiss for failure to state a claim under Rule 12(b)(6).

7 *Id.*  To satisfy the 12(b)(6) pleading standard, a plaintiff must plead his claim with sufficient

8 specificity to "give the defendant fair notice of what the claim is and the grounds upon which it

9 rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[A] complaint must contain

10 sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A

11 claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

12 the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

13 556 U.S. 662, 663 (2009) (citation and internal quotation marks omitted).

14        Defendants generally assert amendment would be futile because the proposed TAC does

15 not "cure the deficiencies" in Plaintiff's SAC.  Opp'n to Mot. to Am. at 7.  In addition, Defendants

16 raise four specific arguments as to why amendment is futile: (1) Plaintiff fails to meet the state tort

17 requirements under the FTCA; (2) the agents are entitled to qualified immunity; (3) Plaintiff lacks

18 Article III standing for declaratory relief; and (4) Plaintiff cannot assert claims against Aitken, as

19 Plaintiff cannot meet the requirements under Federal Rule of Civil Procedure 15(c) and the

20 relation back requirements under California Code of Civil Procedure section 474.  Opp'n to Mot.

21 to Am. at 7-19.  Because Defendants assert Plaintiff's "proposed TAC would be susceptible to the

22 same arguments for dismissal posed by Defendants" in their motions to dismiss, the Court

23 addresses those motions in this Order as well.  *Id.* at 7.

24        1.       Proposed FTCA Claims

25        "The United States can be sued only to the extent that it waives its sovereign immunity

26 from suit."  *Cervantes v. United States*, 330 F.3d 1186, 1188 (9th Cir. 2003).  "The FTCA, enacted

27 in 1946, was designed primarily to remove the sovereign immunity of the United States from suits

28 in tort."  *Levin v. United States*, 133 S. Ct. 1224, 1228 (2013) (internal quotations omitted).  "The

10

FTCA waives the federal government's sovereign immunity for tort claims arising out of the

negligent conduct of government employees and agencies in circumstances where the United

States, if a private person, would be liable to the claimant under the law of the place where the act

or omission occurred." *Green v. United States*, 630 F.3d 1245, 1249 (9th Cir. 2011).  Under the

FTCA, "federal district courts [have] exclusive jurisdiction over claims against the United States

for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act

or omission' of federal employees acting within the scope of their employment." *Levin*, 133 S. Ct.

at 1228 (quoting 28 U.S.C. § 1346(b)(1)).  State law provides the substantive law governing an

FTCA claim.  *Conrad v. United States*, 447 F.3d 760, 767 (9th Cir. 2006) ("In assessing the

United States' liability under the FTCA, we are required to apply the law of the state in which the

alleged tort occurred."); 28 U.S.C. § 1346(b)(1) ("the United States . . . [is] liable to the claimant

in accordance with the law of the place where the act or omission occurred").

The United States' waiver of immunity, however, is limited by the exceptions set forth in

28 U.S.C. § 2680.  One provision, known as the intentional tort exception, "preserves the

Government's immunity from suit for '[a]ny claim arising out of assault, battery, false

imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander,

misrepresentation, deceit, or interference with contract rights.'" *Millbrook v. United States*, 133 S.

Ct. 1441, 1442 (2013) (quoting 28 U.S.C. § 2680(h)).  There is, however, a "law enforcement

proviso," which extends the waiver of sovereign immunity to six intentional torts "covering claims

that arise out of the wrongful conduct *of law enforcement officers*." *Id.* (emphasis added) (quoting

28 U.S.C. § 2680(h) (immunity lifted "with regard to acts or omissions of investigative or law

enforcement officers of the United States Government").  Those six intentional torts are assault,

battery, false imprisonment, false arrest, abuse of process, and malicious prosecution. *Id.*  Section

2680(h) defines an "investigative or law enforcement officer" as "any officer of the United States

who is empowered by law to execute searches, to seize evidence, or to make arrests for violations

of Federal law."

In his proposed TAC, Plaintiff asserts five claims under the FTCA: (1) false arrest/false

imprisonment, (2) negligence, (3) intentional infliction of emotional distress, (4) negligent

United States District Court
Northern District of California

infliction of emotional distress, and (5) abuse of process.  Prop. TAC ¶¶ 95-147.  Defendants

argue amendment is futile as to these claims because Plaintiff cannot meet the state tort

requirements.  Opp'n to Mot. to Am. at 7.

                    *a.     False Arrest/False Imprisonment*

     Court One of the proposed TAC alleges "Defendants caused [Plaintiff's] false

imprisonment June 15, 2007 to July 31, 2009" through the unlawful immigration detainers.  Prop.

TAC ¶¶ 95-109.

     The Court applies California law to Plaintiff's false imprisonment claim.  *See Tekle v.*

*United States*, 511 F.3d 839, 853 (9th Cir. 2007) (collecting cases where courts applied California

law to FTCA claim for false imprisonment).  Under California law, false imprisonment requires

the "(1) nonconsensual, intentional confinement of a person, (2) without lawful privilege, (3) for

an appreciable period of time, however brief."  *Bocanegra v. Jakubowski*, 241 Cal. App. 4th 848,

855 (2015) (internal quotations omitted); *see also Watts v. Cty. of Sacramento*, 256 F.3d 886, 891

(9th Cir. 2001) ("Under California law, the torts of false arrest and false imprisonment are not

separate torts, as false arrest is 'but one way of committing a false imprisonment.'" (quoting

*Asgari v. City of L.A.*, 15 Cal. 4th 744, 847 n.3 (1997)).

     As an initial matter, the Ninth Circuit has held that "Mendia lacks standing to seek

damages for any period of pre-trial detention he suffered after the state court granted him release

on his own recognizance."  *Mendia*, 768 F.3d at 1013 n.1.  It explained that although

"[a]pproximately six months after lodging the detainer against Mendia, the ICE agents cancelled it

. . . . [i]n the interim, on an unspecified date, the state court removed the bail condition and granted

Mendia release on his own recognizance."  *Id.* at 1011.  Plaintiff, "believ[ing] the immigration

detainer was still in place, . . . refused to accept release, even though he no longer needed the

assistance of a bail bondsman to get out."  *Id.*  "Given that he chose to remain in state custody

rather than accept release, . . . . [t]he loss of liberty he experienced after being granted release on

his own recognizance is thus a self-inflicted injury."  *Id.* at 1013 n.1.  Plaintiff's SAC and

proposed TAC do not provide any further details about this event, and the Court makes no

findings at this time regarding the period for which Plaintiff may recover.  Nevertheless, while the

1   Ninth Circuit has held Plaintiff cannot seek damages for the entire time he was in state custody, he

2   may still potentially recover for the time between the date Chang issued the June 16, 2007

3   immigration detainer and the date the state court released Plaintiff on his own recognizance.

4        Turning to Defendants' futility argument, they argue Plaintiff cannot state a claim for false

5   imprisonment because his "arrest and subsequent pretrial detention . . . were executed pursuant to

6   lawful privilege by local police in accordance with [a] valid warrant and court order by the

7   Superior Court of California in Contra Costa County."  U.S. MTD at 10.  However, as Defendants

8   themselves note, "Plaintiff does not challenge the lawfulness of his arrest by police or his pretrial

9   custody" for financial crimes.  *Id.*; *see* Prop. TAC ¶ 21-22.  Rather, Plaintiff contests the validity

10  of the immigration detainer Defendants placed on him and argues they compelled him to remain in

11  pretrial detention when he otherwise would not have had to do so.  Prop. TAC ¶ 105; *see Martinez*

12  *v. City of L.A.*, 141 F.3d 1373, 1380 (9th Cir. 1998) ("Under California law, a claim for false

13  imprisonment grounded upon prolonged detention may arise if a person is 'deprived of his liberty

14  after his jail term ends.'" (quoting *Sullivan v. Cty. of L.A.*, 12 Cal. 3d 710, 715 (1974)).  Plaintiff

15  alleges bail bondsmen refused to do business with him due to the detainers, and thus Plaintiff was

16  unable to post bail.  Prop. TAC ¶¶ 52-55.  He further alleges the detainer prevented him from

17  engaging in plea negotiations as "[b]eing branded an alien by ICE could be grounds for probation

18  to be denied" or from petitioning the state court for a bail reduction or a grant of release on his

19  own recognizance.  *Id.* ¶¶ 58, 60.  As such, Defendants have not shown Plaintiff is unable to state

20  a claim for false imprisonment.

21            *b.    Negligence*

22       Count Two of the Proposed TAC asserts a claim of negligence under the FTCA.  Prop.

23  TAC ¶¶ 110-19.  Defendants do not raise a specific object to Plaintiff's negligence claim, but as

24  noted above, have generally asserted that "Plaintiff fails to meet the state tort requirements under

25  the FTCA."  Opp'n to Mot. to Am. at 7.

26       Under the FTCA, a plaintiff may sue the United States for injuries caused by the

27  negligence of federal employees.  *Allen v. Veterans Admin.*, 749 F.2d 1386, 1388 (9th Cir. 1984)

28  ("The Federal Tort Claims Act provides that the United States is the sole party which may be sued

United States District Court
Northern District of California

13

for personal injuries arising out of the negligence of its employees.").  "In order to establish negligence under California law, a plaintiff must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages."  *Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003) (citing *Martinez v. Pac. Bell*, 225 Cal. App. 3d 1557, 1564 (1990)).

Plaintiff alleges ICE officials have a duty to act with reasonable care and to not subject individuals to (1) personal injury; (2) "discriminatory treatment on the basis of actual or perceived race, ethnicity, and/or national origin;" and (3) "deprivations of liberty without due process." Prop. TAC ¶¶ 111-14.  He further asserts ICE officials have a duty "to adequately train and supervise their subordinates and to establish and enforce policies and practices that prevent the occurrence of unconstitutional and tortious actions by their subordinates." *Id.* ¶ 115.  But here Plaintiff asserts Defendants were negligent by wrongfully placing ICE detainers on him and by failing to (1) properly cancel the first ICE detainer; (2) take appropriate measures to ensure that it did not appear that the first ICE detainer was still in place; (3) take appropriate measures to ensure that it did not appear that another ICE detainer was put in place; and (4) inform Plaintiff when Garcia dropped the detainer. *Id.* ¶ 116.  Given these allegations, Defendants have not shown Plaintiff is unable to state a claim for negligence.

### c.    Intentional Infliction of Emotional Distress

Count Three seeks to assert a claim of intentional infliction of emotional distress.  Prop. TAC ¶¶ 120-30.  Defendants contend Plaintiff fails to show "outrageous" behavior or intent to cause emotional distress as his allegations are merely conclusory.  U.S. MTD at 14; *see* Prop. TAC ¶¶ 120-30.

The Ninth Circuit has held that "the tort of intentional infliction of emotional distress is not excluded as a matter of law from FTCA by § 2680(h)."  *Sheehan v. United States*, 896 F.2d 1168, 1172 (9th Cir. 1990), *amended*, 917 F.2d 424 (9th Cir. 1990).  In making this determination, the *Sheehan* court noted "'[t]here is no justification for this Court [or any court] to read exemptions into the [Federal Tort Claims] Act beyond those provided by Congress.'" (quoting *Rayonier Inc. v. United States*, 352 U.S. 315, 320 (1957) (alterations in the original)).   Accordingly, to state a claim for intentional infliction of emotional distress under California law, a plaintiff must show

14

United States District Court
Northern District of California

1  "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless

2  disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or

3  extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the

4  defendant's outrageous conduct." *Corales v. Bennett*, 567 F.3d 554, 571 (9th Cir. 2009)

5  (quotations omitted).  "The California Supreme Court has set a 'high bar' for what can constitute

6  severe distress." *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1376 (2010).  "Severe emotional

7  distress means emotional distress of such substantial . . . or enduring quality that no reasonable

8  [person] in civilized society should be expected to endure it." *Potter v. Firestone Tire & Rubber*

9  *Co.*, 6 Cal. 4th 965, 1004 (1993) (quotations omitted).  Conduct is "outrageous" if it is "so

10  extreme as to exceed all bounds of that usually tolerated in a civilized community." *Christensen v.*

11  *Super. Ct.*, 54 Cal. 3d 868, 903 (1991).

12         During the interrogation, Plaintiff alleges Chang and Garcia engaged in a "staring contest"

13  with him when he refused to speak, and Garcia subsequently made a statement to the effect of

14  "We'll see if you want to talk when we're deporting your ass!"  Prop. TAC ¶¶ 44-45.  Upon

15  learning of the detainer, Plaintiff "first experienced anger that shifted to chagrin, then fright,

16  followed by worry, and finally grief and depression." *Id.* ¶ 125.  This has "lasted over two years

17  from June 16, 2007 to July 31, 2009, and continues to this day" and has also resulted in a

18  gastrointestinal disorder. *Id.*  Plaintiff alleges his "emotional distress was the natural

19  consequence" of Chang's and Garcia's actions and that they intended to cause such distress. *Id.* ¶¶

20  124, 129.  Plaintiff's allegations about the agents' threat of deportation combined with Plaintiff's

21  imprisonment under the detainer state plausible facts to support an intentional infliction of

22  emotional distress claim.  As such, Defendants have not shown that amendment would be futile.

23                    d.      *Negligent Infliction of Emotional Distress*

24         Count Four asserts a claim for negligent infliction of emotional distress.  Prop. TAC

25  ¶¶ 131-41.  "A claim of negligent infliction of emotional distress is not an independent tort but the

26  tort of negligence to which the traditional elements of duty, breach of duty, causation, and

27  damages apply." *Wong*, 189 Cal. 4th at 1377.  Negligent infliction of emotional distress

28  claims are instead treated as a type of negligence claim. *Karimi v. GMAC Mortg.*, 2011 WL

1    3360017, at *3 (N.D. Cal. Aug. 2, 2011) (citing *Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th

2    790, 818 (2006)).  As Plaintiff brings a separate claim for negligence, it would be redundant to

3    allow him to also bring a claim for negligent infliction of emotional distress.  Accordingly, leave

4    to add a separate claim of negligent infliction of emotional distress would be futile.

5                        e.      Abuse of Process

6          Count Five asserts a claim of abuse of process under the FTCA.  Prop. TAC ¶¶ 142-47.

7    Under California law, abuse of process requires proof that the "'the defendant (1) contemplated an

8    ulterior motive in using the process, and (2) committed a willful act in the use of the process not

9    proper in the regular conduct of the proceedings.'"  *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000,

10   1011 (9th Cir. 2011), *as amended* Aug. 19, 2011 (quoting *Booker v. Rountree*, 155 Cal. App. 4th

11   1366, 1371 (2007)).

12         Plaintiff alleges Chang and Garcia "intentionally placed ICE detainers on Plaintiff to

13   retaliate against him for asserting his Fifth Amendment right against self-incrimination and/or

14   from engaging in speech protected by the First Amendment."  Prop. TAC ¶ 144.  As this is a

15   newly added claim, Defendants do not address it in their Motions to Dismiss, *see* U.S. MTD;

16   Agents MTD, and their only argument is again a blanket assertion that "Plaintiff fails to meet the

17   state tort requirements under the FTCA."  Opp'n to Mot. to Am. at 7.  However, "under well-

18   established California law, the tort of abuse of process 'requires misuse of a *judicial* process.'"

19   *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1037 (9th Cir. 2008)

20   (emphasis in original) (quoting *Stolz v. Wong Commc'ns Ltd. P'ship*, 25 Cal. App. 4th 1811, 1822

21   (1994).  In other words, "[i]t is a process that is 'pursuant to authority of [a] court.'"  *Estate of*

22   *Tucker*, 515 F.3d at 1037 (alterations in the original) (quoting *Meadows v. Bakersfield Sav. &*

23   *Loan Ass'n*, 250 Cal. App. 2d 749, 753 (1967)).

24         Plaintiff relies on the issuance of the immigration detainer as the basis for his claim; but he

25   has not identified any judicial process Defendants allegedly abused.  Without more, he has failed

26   to allege a cognizable abuse of process claim.  *See United States v. Juarez-Velasquez*, 763 F.3d

27   430, 435 (5th Cir. 2014) (describing immigration detainer as "simply an administrative

28   mechanism"); *Estate of Tucker*, 515 F.3d at 1037 ("Misuse of an administrative proceeding—even

16

one that is quasi-judicial—does not support a claim for abuse of process.").  As such, the Court cannot grant Plaintiff leave to add this claim as it would be futile.

### 2.   Proposed *Bivens* Claims

Plaintiff's SAC alleges two *Bivens* claims against Chang and Garcia for violations of his Fifth Amendment rights to equal protection and substantive due process.  SAC ¶¶ 118-50.  Plaintiff's Proposed TAC seeks to add four more *Bivens* claims against Chang and Garcia for violations of his First, Fourth, and Eighth Amendment rights as a result of the allegedly improper detainer.  CITE.  Chang and Garcia argue these claims are futile because (1) there is no *Bivens* remedy in the immigration context, and (2) Chang and Garcia are entitled to qualified immunity.  Agents MTD at 11-34; *see* Opp'n to TAC Mot. at 7 (re-raising qualified immunity argument and arguing Court should decide issue at earliest instance).

The *Bivens* case was the first time the Supreme Court "recognized . . . an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights."  *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (citing *Bivens*, 403 U.S. at 91).  In doing so, the Supreme Court established that "federal courts have the inherent authority to award damages against federal officials to compensate plaintiffs for violations of their constitutional rights."  *W. Ctr. For Journalism v. Cederquist*, 235 F.3d 1153, 1156 (9th Cir. 2000) (citations omitted).  A plaintiff who asserts a *Bivens* claim therefore "seeks to hold federal officers individually liable for constitutional violations."  *Starr v. Baca*, 652 F.3d 1202, 1206 (9th Cir. 2011); *see Malesko*, 534 U.S. 61, 70 (2001) ("The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations.").  A "*Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity."  *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987).  "This is because a *Bivens* suit against a defendant in his or her official capacity would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity."  *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007).

#### a.   Availability of *Bivens* Remedy

Chang and Garcia make three arguments against Plaintiff's *Bivens* claims: (1) the

United States District Court
Northern District of California

1    Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., precludes a *Bivens* remedy; (2)

2    Congress' and the Executive Branch's plenary powers over immigration matters warrants

3    dismissal of Plaintiff's *Bivens* claims; and (3) Plaintiff's status as a fugitive should preclude him

4    from seeking a remedy in this Court.  Agents MTD at 16-26; Opp'n to TAC Mot. at 7 ("[T]he

5    special factors' defense against *Bivens* claims receives the same consideration in the context of the

6    proposed TAC.").

7          The Supreme Court disfavors implied causes of action like *Bivens* and therefore limits their

8    availability.  *Iqbal*, 556 U.S. at 675.  A *Bivens* remedy "has to represent a judgment about the best

9    way to implement a constitutional guarantee."  *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).

10    Damages are not "an automatic entitlement no matter what other means there may be to vindicate

11    a protected interest."  *Id.*  In the 44 years since *Bivens*, the Court "ha[s] recognized two more

12    nonstatutory damages remedies, the first for employment discrimination in violation of the Due

13    Process Clause, . . . and the second for an Eighth Amendment violation by prison officials[.]"  *Id.*

14    at 549-50 (2007) (internal citations omitted); *see Davis v. Passman*, 422 U.S. 228, 245-48 (1979)

15    (implying a damages action under the Fifth Amendment Due Process Clause to hold that a former

16    congressional employee could seek damages against her employer for a claim of gender

17    discrimination); *Carlson v. Green*, 446 U.S. 14, 17-18 (1980) (implying another *Bivens* in

18    allowing a prisoner's estate to pursue damages against federal prison officials for violations of the

19    prisoner's Eighth Amendment rights).  *Carlson* marks the last time the Supreme Court extended

20    *Bivens.  See Minneci v. Pollard*, 132 S. Ct. 617, 622 (2012) ("Since *Carlson*, the Court has had to

21    decide in several different instances whether to imply a *Bivens* action.  And in each instance it has

22    decided against the existence of such an action.").  Rather, "[t]he [Supreme] Court has . . .

23    'recently and repeatedly said that a decision to create a private right of action is one better left to

24    legislative judgment in the great majority of cases."  *Mirmehdi v. United States*, 689 F.3d 975, 981

25    (9th Cir. 2012) (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 695 (2004)).  As a result, the

26    Supreme Court "ha[s] consistently refused to extend *Bivens* liability to any new context or new

27    category of defendants."  *Malesko*, 534 U.S. at 68; *see Minneci*, 132 S. Ct. at 622-23

28    (summarizing cases where Court declined to extend *Bivens*).

United States District Court
Northern District of California

The context in which a plaintiff asserts a *Bivens* action is key; the Supreme Court "ha[s] responded cautiously to suggestions that *Bivens* remedies be extended into new contexts." *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988).  When faced with a *Bivens* claim, the Ninth Circuit "construe[d] the word 'context' as it is commonly used in law: to reflect a potentially recurring scenario that has similar legal and factual components."  *Mirmehdi*, 689 F.3d at 981 (internal quotations omitted).  The Supreme Court has implied a *Bivens* action only "to provide an otherwise nonexistent cause of action against individual officers alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked any alternative remedy for harms caused by an individual officer's unconstitutional conduct."  *Malesko*, 534 U.S. at 70.  "Where such circumstances are not present, [the Court] ha[s] consistently rejected invitations to extend *Bivens*[.]"  *Id.*  In particular, "the Court has emphasized that '[s]o long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability.'"  *Libas Ltd. v. Carillo*, 329 F.3d 1128, 1130 (9th Cir. 2003) (alterations in the original) (quoting *Malesko*, 534 U.S. at 69).

"[T]he decision whether to recognize a *Bivens* remedy may require two steps."  *Wilkie*, 551 U.S. at 550.  The Ninth Circuit first asks "whether there is 'any alternative, existing process for protecting the plaintiff['s] interests.  If there is such an alternative remedy, [the] inquiry stops.  If there is not, [courts] proceed to the next step and ask whether there nevertheless are factors counseling hesitation before devising such an implied right of action."  *Mirmehdi*, 689 F.3d at 982 (quotations and marks omitted).  In other words, even absent an alternative remedy, courts should not extend *Bivens* if there are "any special factors counselling hesitation before authorizing a new kind of federal litigation."  *Wilkie*,  551 U.S. at 550 (quotations omitted).  With that test, the Court considers whether *Bivens* provides a remedy for Plaintiff's claims for (1) First Amendment retaliation, (2) Fourth Amendment unreasonable seizure, (3) Fifth Amendment equal protection, self-incrimination, and due process, and (4) Eighth Amendment excessive bail.

          (i)      Existence of Alternative Remedies

The Supreme Court has refused to extend *Bivens* "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for

1    constitutional violations that may occur in the course of its administration[.]"  *Schweiker*, 487 U.S.

2    at 423.  Defendants argue there are two alternate remedies that preclude a *Bivens* remedy: the

3    remedial measures set forth in the INA and federal habeas relief.

4         Defendants urge the Court to follow the holding of *Mirmehdi*, where the Ninth Circuit

5    declined to extend *Bivens* to constitutional violations stemming from deportation proceedings, in

6    part due to the comprehensive remedial scheme of the INA.  Agents MTD at 19-20.  The

7    *Mirmehdi* plaintiffs were Iranian citizens who were arrested for immigration violations and

8    detained for approximately four years during immigration proceedings.  689 F.3d at 979-80.

9    Having challenged their detention "on direct appeal of their detention, during the merits

10   proceeding related to their asylum applications, and in a federal petition for a writ of habeas

11   corpus[,]" the plaintiffs subsequently sued a Federal Bureau of Investigation agent and an

12   Immigration and Naturalization agent, asserting claims of wrongful detention under *Bivens*.  *Id.* at

13   979.  The court concluded that "deportation proceedings constitute the relevant environment of

14   fact and law in which to decide whether to recognize a *Bivens* remedy."  *Id.* (quotations omitted).

15        The Ninth Circuit first held that the existing remedial system in the INA and the

16   availability of habeas relief precluded the availability of a *Bivens* remedy, as the plaintiffs could

17   and did use those schemes to challenge their detention.  *Id.*  The court next found two factors that

18   "counsel[ed] hesitation" before extending *Bivens*.  *Id.*  First, the INA presented a "complex[] and

19   comprehensive[] . . . existing remedial system[.]"  *Id.*  Second, "immigration issues 'have the

20   natural tendency to affect diplomacy, foreign policy, and the security of the nation,' which further

21   'counsels hesitation' in extending *Bivens*."  *Id.* (quoting *Arar v. Ashcroft*, 585 F.3d 559, 574 (2d

22   Cir. 2009) (en banc)).  Thus, "given the extensive remedial procedures available to and invoked by

23   them and the unique foreign policy considerations implicated in the immigration context[,]" the

24   Ninth Circuit declined to extend *Bivens* to allow illegal immigrants to sue federal agents for

25   wrongful detention pending deportation proceedings.  *Id.* at 983.

26        The Court disagrees with Defendants' contention that "[a]lthough it did not deal with

27   detainers *per se*, the holding in *Mirmehdi* should apply with full force" to this case.  Agents MTD

28   at 19.  Several factors distinguish *Mirmehdi* from this case.  First, the Ninth Circuit identified

United States District Court
Northern District of California

20

deportation proceedings as the context in which it considered the availability of a *Bivens* remedy and limited its holding to that context. *Id.* at 981, 983 ("[W]e decline to extend *Bivens* to allow the [plaintiffs] to sue federal agents for wrongful detention pending deportation[.]"). Plaintiff, however, seeks to sue Chang and Garcia for constitutional violations arising out of an immigration detainer—deportation proceedings against Plaintiff never commenced and no order of removal was ever issued. This case therefore presents a different context than the one considered in *Mirmehdi*. Second, Plaintiff's citizenship further differentiates the case. The *Mirmehdi* court specifically addressed "whether an alien not lawfully in the United States may sue for monetary damages claiming constitutionally invalid detention." 689 F.3d at 978. Whether a citizen may bring a *Bivens* claim requires a different analysis. *Id.* at 981 n.3 ("[W]e must consider whether an immigrant may bring a *Bivens* claim to vindicate certain constitutional rights separately from whether a citizen may bring such a *Bivens* claim."). Plaintiff alleges he is a U.S. citizen, not an alien, and there are no indications that Plaintiff resided in the country illegally. *See* SAC ¶ 10 (asserting Plaintiff acquired derivative U.S. citizenship); Prop. TAC ¶ 1 (same); *see also* 8 U.S.C. § 1101(a)(3) ("The term 'alien' means any person not a citizen or national of the United States.").

Plaintiff's U.S. citizenship makes this case more similar to *Lyttle v. United States*, 867 F. Supp. 2d 1256 (M.D. Ga. 2012), where the court found the INA did not preclude a *Bivens* remedy. The *Lyttle* plaintiff asserted *Bivens* claims for violations of his Fourth and Fifth Amendment rights against ICE agents who allegedly detained and deported the plaintiff to Mexico despite knowing the plaintiff was a U.S. citizen. *Id.* at 1269-74. While *Lyttle* did not concern the issuance of an immigration detainer, the court's analysis of whether the INA provided adequate remedies for citizens so as to foreclose a *Bivens* remedy is applicable to this situation. *Id.* at 1276. The *Lyttle* court found "[t]he remedy under the INA [was] not constitutionally adequate for citizens" because it failed to "provide 'meaningful safeguards or remedies' for a U.S. citizen like [the plaintiff]." *Id.* at 1276 (quoting *Schweiker*, 487 U.S. at 425). Noting the INA provided some "procedural protections for citizens who may be wrongly identified as deportable aliens," the court nevertheless determined those protections were "constitutionally inadequate" to redress a citizen's constitutional violations. *Id.* at 1277 (citing 8 U.S.C. § 1252(b)(5) (authorizing courts of appeal to

United States District Court
Northern District of California

review a petitioner's claim of nationality upon final order of removal)).  The court "conclude[d] that the INA does not provide any meaningful remedy and review procedure for . . . a U.S. citizen" and thus did not prevent the court from crafting a *Bivens* remedy.  *Id.* at 1278.

Thus, while Defendants refer to several provisions of the INA which they contend contain procedures to challenge ICE detention and removal, Agents MTD at 20 (citing 8 U.S.C. §§ 1225, 1229, 1229a, 1229b, 2241), those sections apply specifically to "aliens," which the INA defines as "any person not a citizen or national of the United States."  8 U.S.C. § 1101.  Given Plaintiff's U.S. citizenship, those INA provisions are inapplicable here and do not provide a means of relief.

Finally, although the INA contemplates the possibility of the removal of a U.S. citizen, those remedial measures are inapplicable to Plaintiff's situation.  Section 1252(b)(5) provides that following a final order of removal, "[i]f the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim."  8 U.S.C. § 1252(b)(5).  Because there was no final order of removal, Plaintiff could not have availed himself of this procedure, and such protection is therefore inadequate to address his injuries.  As Plaintiff is a U.S. citizen and no order of removal was issued for him, the Court finds the INA does not provide a remedy to address the alleged violations of his constitutional rights.[6]

The Court next considers whether Plaintiff can remedy his injuries through federal habeas relief.  Defendants further argue that "ICE detention . . . may also be challenged through habeas where appropriate."  Agents MTD at 18.  But Plaintiff contends habeas relief was unavailable in his case because he was never "in custody" for purposes of a habeas petition.  Opp'n to Agents MTD at 8, Dkt. No. 96.

"Habeas corpus proceedings are available only for claims that a person 'is in custody in

---

[6] In their Statement of Supplemental Authority, Defendants bring to the Court's attention *De La Paz v. Coy*, 786 F.3d 367 (5th Cir. 2015).  Dkt. No. 92.  In *De La Paz*, the Fifth Circuit declined to imply a *Bivens* remedy for Fourth Amendment violations arising out of an allegedly illegal stop and arrest of two undocumented immigrants due to the INA's comprehensive remedial system and because *Bivens* would not provide meaningful compensation.  *Id.* at 376-79.  However, *De La Paz* is inapposite for the same reason as *Mirmehdi*—the plaintiffs in *De La Paz* were illegal aliens.  *See* 786 F.3d at 370-71.  As discussed above, Plaintiff's citizenship status is a critical distinguishing factor.

violation of the Constitution or laws or treaties of the United States.'"  *Dickerson v. United States*, 530 U.S. 428, 439 n.3 (2000) (quoting 28 U.S.C. § 2254).  The Ninth Circuit, however, has held that an immigration detainer does not render a person in custody for purposes of habeas relief.  *See Garcia v. Taylor*, 40 F.3d 299, 303 (9th Cir. 1994) ("We now agree with the circuits which have expressed the opinion that the bare [INS] detainer letter alone does not sufficiently place an alien in INS custody to make habeas corpus available."), *superseded by statute on other grounds as stated in Campos v. I.N.S.*, 62 F.3d 311, 314 (9th Cir. 1995).  However, "individuals are 'in custody' for purposes of [habeas corpus] if they are 'subject to a final order of deportation.'"  *Veltmann-Barragan v. Holder*, 717 F.3d 1086, 1088 (9th Cir. 2013) (quotation omitted).  As noted earlier, Plaintiff was never "subject to a final order of deportation" and thus was never in custody.  *See id.*  Because Plaintiff was not "in custody," he could not have sought a writ of habeas corpus.

In light of the foregoing, the Court finds there are no alternate remedies to protect Plaintiff's interests so as to prevent the Court from implying a *Bivens* remedy.  The Court next considers whether special factors counsel against in doing so.

(ii)    Special Factors

First, Chang and Garcia argue Congress' and the Executive Branch's plenary powers over immigration matters constitute a special factor that precludes the availability of a *Bivens* remedy.  Agents MTD at 22-23.  When the defendants in *Lyttle* asserted a similar argument, the court acknowledged this "general observation" but nevertheless rejected the contention because

> fail[ed] to make the distinction between the use of the immigration process to regulate the admission and removal of *aliens*, a legitimate exercise of the power of the political branch of government, and the use of that process to detain and remove *citizens*, an unauthorized exercise of political branch power unless additional constitutional protections are provided to safeguard against the wrongful removal of a citizen from his own country.

867 F. Supp. 2d at 1278 (emphasis in original).  The Court agrees with *Lyttle* that the issuance of an immigration detainer on a U.S. citizen is not a proper exercise of congressional power.

Second, Defendants argue the "fugitive disentitlement doctrine" prevents Plaintiff from asserting his *Bivens* claims.  Agents MTD at 23-26.  The fugitive disentitlement doctrine is a "discretionary sanction courts can impose to prevent appellate review for escapees from the

criminal justice system." *Mamigonian v. Biggs*, 710 F.3d 936, 940 (9th Cir. 2013) (internal quotations omitted). "Courts have regularly applied this doctrine to dismiss both criminal appeals and related civil proceedings instituted by fugitives." *Cordell v. Tilton*, 515 F. Supp. 2d 1114, 1119 (S.D. Cal. 2007) (collecting cases). The Ninth Circuit has "recognized that fugitive disentitlement is a severe sanction that courts should not lightly impose." *Mastro v. Rigby*, 764 F.3d 1090, 1096 (9th Cir. 2014) (quotations omitted). In doing so, use of the doctrine is generally limited "to challenges to detentions, where a [person's] status as a fugitive from confinement clearly undercuts his challenge to his confinement." *Id.*

To apply the fugitive disentitlement doctrine here would be inconsistent with that position, as such a severe sanction is not warranted here. Moreover, courts also require a nexus between the criminal conviction and the civil matter before applying the doctrine. *See Willis v. Mullins*, 2009 WL 1657451, at *2 (S.D. Cal. June 12, 2009) ("[A] sufficient nexus is required in order to apply the fugitive disentitlement doctrine."). There is no such connection in this case. Defendants argue there are outstanding warrants for Plaintiff's arrest, and his status as a fugitive is predicated on the criminal charges for which he was in pretrial detention when the events at issue in this case occurred. Agents MTD at 23, 25; *see* RJN, Ex. B at 1 (clerk's docket and minutes revoking Plaintiff's probation and issuing bench warrant, dated July 25, 2014). Although Plaintiff was initially in pretrial detention because of those criminal charges, the immigration detainer on which this lawsuit is based was unrelated to those charges, and those charges have no bearing on this matter. As such, the Court does not find a connection between Plaintiff's criminal matters and the instant lawsuit to apply the fugitive disentitlement doctrine.

### b. Qualified Immunity

Having established the availability of *Bivens*, the Court considers Defendants' argument that Chang and Garcia are entitled to qualified immunity. Opp'n to Mot. to Am. at 7; Agents MTD at 26-28. "[T]he qualified immunity analysis is identical under either [section 1983 or *Bivens*] cause[s] of action." *Wilson v. Layne*, 526 U.S. 603, 609 (1999). Thus, "[e]ven in circumstances in which a *Bivens* remedy is generally available, an action under *Bivens* will be defeated if the defendant is immune from suit." *Hui v. Castaneda*, 559 U.S. 799, 807 (2010); *see*

1    *F.E. Trotter, Inc. v. Watkins*, 869 F.2d 1312, 1314 (9th Cir. 1989) ("Federal officials may raise a

2    defense of qualified immunity to a *Bivens* action.").

3            "Qualified immunity shields government officials from civil damages liability unless the

4    official violated a statutory or constitutional right that was clearly established at the time of the

5    challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (citing *Ashcroft v. al-

6    Kidd*, 131 S. Ct. 2074, 2080 (2011)).  It "is both a defense to liability and a limited entitlement not

7    to stand trial or face the other burdens of litigation."  *Iqbal*, 556 U.S. at 672 (internal quotation

8    omitted).  Qualified immunity purports "to strike a balance between the competing 'need to hold

9    public officials accountable when they exercise power irresponsibly and the need to shield

10   officials from harassment, distraction, and liability when they perform their duties reasonably.'"

11   *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (en banc) (quoting *Pearson v. Callahan*,

12   555 U.S. 223, 231 (2009)).  An official is entitled to qualified immunity "unless a plaintiff pleads

13   facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right

14   was 'clearly established' at the time of the challenged conduct."  *al-Kidd*, 131 S. Ct. at 2080

15   (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "[C]ourts have discretion to decide

16   which of the two prongs of qualified-immunity analysis to tackle first."  *Id.*

17           To determine "whether the constitutional right was clearly established at the time of the

18   conduct—the critical question is whether the contours of the right were 'sufficiently clear' that

19   every 'reasonable official would have understood that what he is doing violates that right.'"

20   *Mattos*, 661 F.3d at 442 (quoting *al-Kidd*, 131 S. Ct. at 2083; some internal marks omitted).  "The

21   plaintiff bears the burden to show that the contours of the right were clearly established."

22   *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011).  While there need not be

23   "a case directly on point, . . . existing precedent must have placed the statutory or constitutional

24   question beyond debate."  *al-Kidd*, 131 S. Ct. at 2080.  Courts do not "define clearly established

25   law at a high level of generality."  *Id.* at 2084.  Instead, "[t]he inquiry . . . must be undertaken in

26   the light of the specific context of the case, not as a broad general proposition."  *Sjurset v. Button*,

27   __ F.3d __ , 2015 WL 7873404, at *5 (9th Cir. Dec. 4, 2015) (internal quotations omitted;

28   alterations in the original).  "The subjective beliefs of the actual officer are, of course, irrelevant."

United States District Court
Northern District of California

25

1    *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007).

2                      (i)      First Amendment Claim

3          Count Nine of Plaintiff's Proposed TAC alleges Chang and Garcia retaliated against him

4    by placing a detainer on him after he "asserted his First Amendment right to freedom of speech by

5    asserting his Fifth Amendment right against self-incrimination through acts and speech."  Prop.

6    TAC ¶¶ 168-76.  Plaintiff alleges Chang and Garcia otherwise lacked probable cause to issue the

7    detainer because they had "no grounds . . . to believe that Plaintiff was an alien."  *Id.* ¶ 48.  He

8    asserts that when the questioning began, he informed Chang and Garcia that he was a United

9    States citizen with a United States passport issued in 1997, gave them his social security number,

10   and stated that his mother was a United States citizen as well.  *Id.* ¶ 39.  In addition, Plaintiff also

11   had a California state identification card under the name "Bernardo Mendia" and contends "Chang

12   and Garcia, as agents of the federal government, had access to the California Department of Motor

13   Vehicles . . . and should have known that Plaintiff was in fact a United States citizen."  *Id.* ¶ 33.

14   Plaintiff thus appears to claim that by lodging the detainer, the agents violated his right not to

15   speak as they had "no grounds . . . to believe that Plaintiff was an alien."  *Id.* ¶ 48.

16         "[T]he First Amendment guarantees 'freedom of speech,' a term necessarily comprising

17   the decision of both what to say and what not to say."  *Riley v. Nat'l Fed'n of the Blind of N.*

18   *Carolina, Inc.*, 487 U.S. 781, 796-97 (1988); *see Hurley v. Irish-Am. Gay, Lesbian & Bisexual*

19   *Grp. of Boston*, 515 U.S. 557, 573 (1997) ("[O]ne important manifestation of the principle of free

20   speech is that one who chooses to speak may also decide what not to say[.]" (quotations and

21   citation omitted)).  Additionally, "[o]fficial reprisal for protected speech offends the Constitution

22   [because] it threatens to inhibit exercise of the protected right[.]"  *Hartman v. Moore*, 547 U.S.

23   250, 256 (2006) (quotations omitted, alterations in original).  As Plaintiff's refusal to speak falls

24   within the scope of the First Amendment, he has alleged the existence of a constitutional violation.

25         The next step is to determine "whether the right was clearly established, . . . [by] applying

26   an objective but fact-specific inquiry."  *Inouye*, 504 F.3d at 712 (citation and quotations omitted).

27   "[T]he right in question is not the general right to be free from retaliation for one's speech[,]"

28   however, but rather one that is "particularized . . . so that the contours of the right are clear to a

United States District Court
Northern District of California

                                               26

reasonable official." *Reichle*, 132 S. Ct. at 2094 (quotations omitted) (determining the "right in question" to be the "specific right to be free from a retaliatory arrest that is otherwise supported by probable cause."). The question therefore is whether a reasonable official in 2007 would have realized that he or she could not issue an immigration detainer without probable cause on the basis of Plaintiff refusing to speak or asserting his Fifth Amendment right to be silent.

In 2007, it was clearly established that agents were required to have probable cause in order to issue an immigration detainer. First, "[t]he government has conceded for years that a detainer must be supported by probable cause." *Morales v. Chadbourne*, 793 F.3d 208, 217 (1st Cir. 2015). The First Circuit, citing *Cervantez v. Whitfield*, 776 F.2d 556 (5th Cir. 1985), further explained that ICE's predecessor, the Immigration and Naturalization Service, once "stipulated that a detainer 'may only be authorized . . . when the officer has determined that there is probable cause[.]'" *Id.* (quoting *Cervantez*, 776 F.2d at 660) (alterations in the original).

Second, the probable cause requirement to issue an immigration detainer is also reflected in immigration statutes. Pursuant to 8 U.S.C. § 1357(a)(2), immigration officers may make a warrantless arrest of "any alien in the United States, if [the officer] has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest." Similarly, 8 C.F.R. § 287.8 (c)(2)(i) provides that "[a]n arrest shall be made only when the designated immigration officer has reason to believe that the person to be arrested has committed an offense against the United States or is an alien illegally in the United States." The Ninth Circuit has held that "[t]he phrase 'has reason to believe' has been equated with the constitutional requirement of probable cause." *Tejeda-Mata v. I.N.S.*, 626 F.2d 721, 725 (9th Cir. 1980) (citing *United States v. Cantu*, 519 F.2d 494, 496 (7th Cir. 1975), *cert. denied*, 423 U.S. 1035 (1975); *Au Yi Lau v. I.N.S.*, 445 F.2d 217, 222 (D.C. Cir. 1971)); *see also United States v. Cuevas*, 16 F. App'x 781, 782 (9th Cir. 2001) ("Although [the alien] was eventually detained, it was after the INS agent had probable cause to do so under 8 U.S.C. § 1357(a)(1) & (2).").

Accordingly, the Court finds that it was clearly established in 2007 that Chang and Garcia needed to have probable cause to believe Plaintiff was an alien before they could issue an

27

immigration detainer.  To that end, a reasonable officer in Chang or Garcia's position and confronted with the same circumstances would not have determined probable cause existed for the detainer, at least not without making further inquiry.  As such, the Court finds Chang and Garcia are not entitled to qualified immunity as to Plaintiff's First Amendment claim and leave to amend would not be futile.

(ii)     Fourth Amendment

Count Six asserts a violation of Plaintiff's Fourth Amendment right against unreasonable seizure.  Prop. TAC ¶¶ 148-54.  Plaintiff alleges "Chang [and] Garcia . . . caused immigration detainers to issue against Plaintiff, which [] caused a deprivation of Plaintiff's liberty[,]"[7] and that they did not have probable cause to issue the detainer.  *Id.* ¶ 151.  Plaintiff further asserts that at the time these events occurred, it was clearly established that lodging an immigration detainer against a United States citizen was a violation of the Fourth Amendment.  *Id.* ¶ 153.

The Fourth Amendment protests persons against "unreasonable searches and seizures."  U.S. Const. amend. IV.  It "applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest."  *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975).  "It is well established that an arrest [or detention] without probable cause violates the Fourth Amendment[.]"  *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1076 (9th Cir. 2011) (internal quotations omitted); *see also Wilson v. Porter*, 361 F.2d 412, 415 (9th Cir. 1966) (noting "the constitutional prohibition against unreasonable searches and seizures makes no distinction between informal detention without cause and formal arrest without cause").  "[W]hile a detainer is distinct from an arrest, it nevertheless results in the detention of an individual."  *Morales*, 793 F.3d at 217 (citing 8 C.F.R. § 287.7).

Faced with a similar situation, the First Circuit in *Morales* denied an ICE agent qualified immunity on a Fourth Amendment claim.  The *Morales* plaintiff was a naturalized United States citizen who was imprisoned in 2009 pursuant to an immigration detainer to allow ICE agents to

---

[7] The Ninth Circuit has made clear that "ICE never had custody of Mendia, and he therefore cannot allege that the ICE detainer directly caused his confinement."  *Mendia*, 768 F.3d at 1012.  Nevertheless, while the immigration detainer did not directly cause any unreasonable seizure, it may have done so indirectly—namely, by rendering Plaintiff unable to secure a bail bond.  *See id.*

United States District Court
Northern District of California

investigate her immigration status.  *Id.* at 211.  The plaintiff subsequently alleged violations of her

Fourth and Fifth Amendment rights against the ICE agent who issued the detainer and the agent's

supervisors.  *Id.*  The First Circuit held that "[i]t was . . . clearly established well before [the

plaintiff] was detained in 2009 that immigration stops and arrests were subject to the same Fourth

Amendment requirements that apply to other stops and arrests—reasonable suspicion for a brief

stop, and probable cause for any further arrest and detention."  *Id.* at 215.  Although the First

Circuit's holding concerned conduct that occurred in 2009—two years after the events in this

case—the court relied on precedent establishing the right long before 2007.  In so holding, the

First Circuit relied in part on *United States v. Brignoni-Ponce*, 422 U.S. 873 (1975).  *Id.*  In

*Brignoni-Ponce*, the Supreme Court considered when a "roving patrol may stop a vehicle in an

area near the border and question its occupants[.]"  422 U.S. at 876.  The Court held that while

officers need only "have a reasonable suspicion to justify" stopping an individual to make

inquiries about that person's "citizenship and immigration status, . . . any further detention or

search must be based on consent or probable cause."  *Id.* at 881-82.  Thus, as discussed above, it

was clearly established in 2007 that officials were required to have probable cause in order to issue

an immigration detainer and it was clearly established that any seizure or detention based on

citizenship or immigration status likewise required probable cause.

　　　　Plaintiff's proposed TAC sets forth enough facts to raise a proper claim that ICE officer in

the same circumstances and with the same knowledge as Chang and Garcia could not have

reasonably believed probable cause existed to place a detainer on Plaintiff.  Plaintiff alleges facts

to show Chang and Garcia would have been aware of the fact that he was a United States citizen.

*See* Prop. TAC ¶ 39 ("As soon as the questioning of Plaintiff began, Plaintiff stated in English that

he was a United States citizen; he gave CHANG and GARCIA his full social security number; he

informed CHANG and GARCIA that he had a United States passport last issued to him in June of

1997 in San Francisco California; and that his mother was also a United States citizen.").  Despite

Plaintiff's assertions, Chang and Garcia placed an immigration detainer on him, allegedly with "no

grounds . . . to believe that Plaintiff was an alien."  *Id.* ¶¶ 46, 48.  While ICE never assumed

custody of Plaintiff, Plaintiff contends the detainer forced him to remain in pretrial detention, as it

1    rendered him unable to secure a bail bond, to seek a reduction in bail or a release on his own

2    recognizance, or to engage in plea negotiations.  *Id.* ¶¶ 50, 52-53, 55, 58, 60.  As such, the Court

3    finds Chang and Garcia are not entitled to qualified immunity on Plaintiff's Fourth Amendment

4    claim, and leave to amend would not be futile.

(iii)    Fifth Amendment Equal Protection

5

6           Count Seven asserts a violation of Plaintiff's Fifth Amendment right to equal protection.

7    Prop. TAC ¶¶ 155-59.  Plaintiff alleges Chang and Garcia selected him for questioning due to his

8    foreign birth and/or because his name and appearance indicates he is of Mexican descent.  *Id.* ¶ 27.

9    He further claims that "[b]y issuing detainers against Plaintiff solely on the basis of his race,

10   ethnicity, and/or national origin—including his place of birth and name—Defendants Garcia [and]

11   Chang . . . targeted Plaintiff illegally" in violation of the Fifth Amendment.  *Id.* ¶ 156.

12          The Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within

13   its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.  The Amendment is

14   "essentially a direction that all persons similarly situated should be treated alike."  *City of*

15   *Cleburne v. Cleburne Living Ctr.*, 474 U.S. 432, 439 (1985).  The Fifth Amendment, which

16   applies to the federal government, does not explicitly contain a similar provision.  *See* U.S. Const.

17   amend. V.  Nevertheless, "[t]he liberty protected by the Fifth Amendment's Due Process Clause

18   contains within it the prohibition against denying to any person the equal protection of the laws."

19   *United States v. Windsor*, 133 S. Ct. 2675, 2695 (2013).  Thus, a damages remedy under *Bivens* is

20   available to address violations of the equal protection component of the Fifth Amendment Due

21   Process Clause.  *Davis*, 442 U.S. at 248.

22          As noted above, it is unnecessary that there be a prior, on-point case with similar facts and

23   circumstances in order to show that a right was clearly established at the time of the alleged

24   violation, and "[t]his is especially true in equal protection cases because the non-discrimination

25   principle is so clear."  *Elliot-Park v. Manglona*, 592 F.3d 1003, 1008 (9th Cir. 2010).  "The

26   constitutional right to be free from such invidious discrimination is so well established and so

27   essential to the preservation of our constitutional order that all public officials must be charged

28   with knowledge of it."  *Flores v. Pierce*, 617 F.2d 1386, 1392 (9th Cir. 1980).

United States District Court
Northern District of California

1       According to Plaintiff, Chang and Garcia's sole grounds for interrogating him and issuing

2   the detainer were his race or foreign birth.  Prop. TAC ¶ 27.  If true, using race or national origin

3   as the only reasons to deprive Plaintiff of his liberty violates his constitutional rights.  *See*

4   *Brignoni-Ponce*, 422 U.S. at 886 ("Even if [officers] saw enough to think that the [vehicle's]

5   occupants were of Mexican descent, this factor alone would justify neither a reasonable belief that

6   they were aliens, nor a reasonable belief that the car concealed other aliens who were illegally in

7   the country."); *United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982) ("Race or color

8   alone is not a sufficient basis for making an investigatory stop."); *Morales v. Chadbourne*, 996 F.

9   Supp. 2d 19, 35 (D.R.I. 2014) (ICE investigation of plaintiff with her "nation of birth as a sole

10   permissible basis for her loss of liberty does not pass constitutional muster."), *aff'd in part,*

11   *dismissed in part on jurisdictional grounds*, 793 F.3d 208 (1st Cir. 2015).

12       Moreover, as noted earlier, immigration detainers require probable cause, and Plaintiff

13   provided Chang and Garcia with his social security number and informed them that he had a

14   United States passport as evidence of his citizenship before they issued the detainer.  Prop. TAC

15   ¶ 39.  As such, the Court finds that a reasonable officer in Chang's and Garcia's positions would

16   have known that using Plaintiff's race as the sole basis for his interrogation and the detainer

17   violates the principles of equal protection.  Accordingly, the Court finds Chang and Garcia are not

18   entitled to qualified immunity as to Plaintiff's Fifth Amendment equal protection claim, and leave

19   to amend would therefore not be futile.

20             (iv)    Fifth Amendment Self-Incrimination

21       Count Nine alleges a violation of Plaintiff's Fifth Amendment right against Self-

22   Incrimination.  Prop. TAC ¶¶ 168-76.  During the interrogation, "Plaintiff stated to Chang and

23   Garcia words to the effect that he was going to invoke his Fifth Amendment right to remain

24   silent."  *Id.* ¶ 41.  He affirmed his decision to remain silent with "a stern horizontal shake of his

25   head" after Garcia said something to the effect of "Oh! You don't want to talk?"  *Id.* ¶¶ 42-43.

26   Plaintiff accuses Chang and Garcia of issuing the immigration detainer in order to retaliate against

27   Plaintiff for exercising his Fifth Amendment right against self-incrimination.  *Id.* ¶ 162.

28       The Fifth Amendment ensures that "[n]o person . . . shall be compelled in any criminal

1  case to be a witness against himself." U.S. Const. amend. V.  A person cannot be penalized for

2  invoking his Fifth Amendment privilege during a police custodial interrogation.  *Miranda v.*

3  *Arizona*, 384 U.S. 436, 468 n.37 (1966).  "Statements compelled by police interrogations of course

4  may not be used against a defendant at trial, but it is not until their use in a criminal case that a

5  violation of the Self-Incrimination Clause occurs."  *Chavez v. Martinez*, 538 U.S. 760, 767 (2003)

6  (internal citations omitted).

7          There is no dispute that in 2007, a person had a right to remain silent during a custodial

8  interrogation.  *See Miranda*, 384 U.S. at 460.  Rather, the key inquiry is whether Plaintiff alleges a

9  constitutional violation.  As a threshold matter, there is a question of whether Chang's and

10  Garcia's attempts to question Plaintiff amounted to a custodial interrogation.  The privilege

11  against self-incrimination "does not apply outside the context of the inherently coercive custodial

12  interrogation for which it was designed."  *Roberts v. United States*, 445 U.S. 552, 552 (1980).  A

13  custodial interrogation refers to "questioning initiated by law enforcement officers after a person

14  has been taken into custody or otherwise deprived of his freedom of action in any significant

15  way."  *Miranda*, 384 U.S. at 444.  Generally, courts have found there is a custodial interrogation

16  when a reasonable person does not believe he is free to leave.  *See Orozco v. Texas*, 394 U.S. 324,

17  327 (1969) (finding petitioner was in custody and not free to leave when law enforcement officers

18  questioned him in his bedroom in the early morning); *United States v. Craighead*, 539 F.3d 1073,

19  1085-88 (9th Cir. 2008) (finding custodial interrogation where appellant reasonably believed he

20  was not free to leave where eight law enforcement officers entered appellant's home, and

21  appellant was escorted to a back storage room with guarded door and isolated from others).

22          Plaintiff was already in custody when Chang and Garcia sought to question him.  *See* Prop.

23  TAC ¶ 21.  Under such circumstances, the determination of whether a custodial interrogation took

24  place requires the consideration of four factors:

25          the language used to summon the individual, the physical
26          surroundings of the interrogation, the extent to which he is
        confronted with evidence of his guilt, and the additional pressure
27          exerted to detain him must be considered to determine whether a
        reasonable person would believe there had been a restriction of his
        freedom over and above that in his normal prisoner setting.

*Cervantes v. Walker*, 589 F.2d 424, 428 (9th Cir. 1978).

Interrogation by non-prison employees regarding an unrelated offense can amount to an additional restriction on a prisoner's freedom.  *See Mathis v. United States*, 391 U.S. 1 at 4-5 (1968). Such is the case here—Chang and Garcia are ICE agents, not jail employees, and they sought to question Plaintiff while he was in custody on a matter unrelated to his pending state criminal charges.  This weighs in favor of finding custodial interrogation.  *See United States v. Serna-Vargas*, 1998 WL 10361, at *1, 133 F.3d 930 (9th Cir. 1998) (unpublished) ("[T]he fact that an INS agent entered the prison to question [the defendant] about an unrelated charge would likely satisfy the 'additional restrictions' test of *Cervantes*.").

However, the existence of any additional restrictions is only one factor; there are no facts that otherwise indicate a custodial interrogation.  For instance, Plaintiff does not state where the questioning took place, if it was in his cell or some other location in the jail.  There are also no facts showing how Plaintiff was brought in for questioning; Plaintiff merely alleges he "was approached by Chang, and then Garcia[.]"  Prop. TAC ¶ 30.  Although Plaintiff alleges that individuals who refused to be questioned would be threatened with prosecution for resisting or delaying an officer or would be punished in some other fashion, *id.* ¶ 35, Plaintiff does not allege that he himself received such threats.

As it stands, Plaintiff does not allege a custodial interrogation, and he therefore cannot allege a violation of his Fifth Amendment privilege against self-incrimination.  *See Cervantes*, 589 F.2d at 427-29 (no custodial interrogation where deputy questioned prisoner after routine search yielded contraband and interrogation took place in prison library while prisoner was being moved to different cell); *Barron v. Cate*, 2013 WL 978681, at *3-5 (E.D. Cal. Mar. 12, 2013) (finding no custodial interrogation where defendant questioned prisoner under normal prison conditions). Accordingly, leave to amend would be futile as to this claim.

(v)     Fifth Amendment Substantive Due Process

Count Ten asserts a violation of Plaintiff's Fifth Amendment substantive due process rights.  Prop. TAC ¶¶ 177-82.  Plaintiff alleges Chang and Garcia violated his right to substantive due process by depriving him of "a citizenship right that can be seen as a quasi-property right" and

United States District Court
Northern District of California

of his liberty by preventing him from securing a bail bond or by petitioning the state court for pretrial release, which forced him to remain in pretrial detention. *Id.* ¶ 179.  Plaintiff further accuses Chang and Garcia of "impeding his right to be free from federal government intrusions on this [sic] state court proceedings[.]"  *Id.*

Fifth Amendment "substantive due process prevents the government from engaging in conduct that shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty."  *United States v. Salerno*, 481 U.S. 739, 746 (1987) (quotations and citations omitted). However, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (alterations in original) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality op.)); *see United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.").  As such, to the extent Plaintiff's detention claims falls under the purview the Fourth or Eighth Amendments or other provisions of the Fifth Amendment, Plaintiff cannot rely on substantive due process as a means of redress.

Plaintiff's allegations regarding his deprivation of liberty and his pretrial detention are governed by the Fourth Amendment, and the First Amendment encompasses his claim concerning his speech rights.  The Eighth Amendment covers his assertions of excessive bail.  Plaintiff cannot therefore rely on Fifth Amendment substantive due process to pursue those claims.  In addition, Plaintiff does not show how an immigration detainer deprives Plaintiff of his citizenship in ways other than restricting his liberty or how the detainer in fact affected his state court proceedings. There are no allegations, for instance, that the state court was aware of the detainer until July 31, 2009, the date the state court released Plaintiff on his own recognizance, such that the detainer interfered with those proceedings.  *See* Prop. TAC ¶ 78.  As Plaintiff fails to show Chang and Garcia violated his constitutional rights, qualified immunity bars this claim.  Accordingly, the Court finds leave to amend would be futile as to Plaintiff's Fifth Amendment substantive due

process claim.

(vi)    Eighth Amendment

Count Eleven alleges a violation of Plaintiff's Eighth Amendment right against excessive bail. Prop. TAC ¶¶ 183-88. Plaintiff alleges the immigration detainer Chang and Garcia issued rendered him unable to obtain bail and caused his detention in violation of his right to be free from excessive bail. *Id.* ¶ 185.

The Eighth Amendment provides that "[e]xcessive bail shall not be required" for pretrial release. U.S. Const. amend. VIII. "[T]he Excessive Bail Clause prevents the imposition of bail conditions that are excessive in light of the valid interests the state seeks to protect by offering bail." *Galen v. Cty. of L.A.*, 477 F.3d 652, 660 (9th Cir. 2007) (citing *United States v. Salerno*, 481 U.S. 739, 754 (1987)). In order to prevail on an excessive bail claim, a plaintiff must show that the bail conditions are excessive for the purpose of achieving "the valid state interests for which bail is intended to serve for a particular individual." *Id.* A plaintiff must also demonstrate that the law enforcement official was the actual and proximate cause of the excessive bail by deliberately or recklessly making misrepresentations to the court. *Id.* at 663-64.

Plaintiff does not contest the amount of his bail, and there are no allegations the state court enhanced his bail for invalid purposes or otherwise set an amount that was excessive in light of the valid purpose it sought to serve. *See id.* at 661. Plaintiff instead alleges bail was unconstitutionally excessive because he could not obtain a bail bond on account of the immigration detainer. However, "[t]he mere fact that [a plaintiff] may not have been able to pay the bail does not make it excessive." *White v. Wilson*, 399 F.2d 596, 598 (9th Cir. 1968). Moreover, it does not appear the detainer affected the amount of Plaintiff's bail itself. The state court set Plaintiff's bail before Chang and Garcia issued the immigration detainer. *See* Prop. TAC ¶ 25. As a result, the detainer could not have influenced the state court's determination of bail, and there are no facts to suggest that either Chang or Garcia had any influence on the state court. There is also no indication the state court increased Plaintiff's bail after Chang and Garcia placed the detainer on him.

As such, Plaintiff fails to satisfy the first inquiry of the qualified immunity analysis—that

35

Chang and Garcia violated his constitutional right.  *See al-Kidd*, 131 S. Ct. at 2080.  Accordingly, the Court finds Chang and Garcia are entitled to qualified immunity as to Plaintiff's Eighth Amendment claim, and leave to amend would be futile.

### 3. Proposed Declaratory Relief Claims

The Declaratory Judgment Act ("DJA") provides that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . . Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."  28 U.S.C. § 2201(a).  The DJA purports to provide a "remedy to one who is uncertain of his rights and who desires an early adjudication thereof without having to wait until his adversary should decide to bring suit, and to act at his peril in the interim."  *McGraw-Edison Co. v. Preformed Line Prods. Co.*, 362 F.2d 339, 342 (9th Cir. 1966).

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).  In other words, a plaintiff does not have an absolute right to declaratory relief, and "the decision to grant declaratory relief should always be made with reference to the public interest."  *United States v. State of Wash.*, 759 F.2d 1353, 1357 (9th Cir. 1985).  Courts should deny such relief "when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties."  *Id.*

Plaintiff's Proposed TAC asserts six claims under the DJA against all Defendants.  He seeks declarations that Defendants (1) failed to adequately investigate Plaintiff's citizenship; (2) detained Plaintiff without providing adequate notice or opportunity to respond; (3) detained and interrogated Plaintiff without reasonable suspicion that Plaintiff was subject to removal or detention; and (4) violated Plaintiff's rights under the First, Fourth, Fifth, and Eighth Amendments.  Prop. TAC ¶¶ 189-224.

Defendants argue Plaintiff does not have standing to assert his claims under the DJA,[8] and

---

[8] Although Plaintiff has standing to assert his FTCA and *Bivens* claims, "a determination that a plaintiff has standing to seek damages does not ensure that the plaintiff can also seek injunctive or

United States District Court
Northern District of California

they refer to their arguments concerning the same in their Motion to Dismiss Plaintiff's SAC. Opp'n to Mot. to Am. at 7; *see* U.S. MTD at 3-7.  In that Motion, Defendants argue Plaintiff failed to show (1) the likelihood of a similar future injury as a result of alleged ICE policies and procedures and (2) the redressability of such injury.  U.S. MTD at 3.

The Court first notes the alleged constitutional violations occurred in 2007 and 2008, and Plaintiff does not allege these violations are ongoing.  The declaratory relief sought is thus retrospective, not prospective, in nature.  *See Rodriguez v. Tilton*, 2015 WL 3507126, at *2 (E.D. Cal. June 3, 2015) (finding plaintiff sought retrospective declaratory relief where court could not "discern any allegations of ongoing violations in the complaint").  When a plaintiff seeks retrospective declaratory relief, courts have declined to award such relief where "the issuance of a declaratory judgment . . . would have much the same effect as a full-fledged award of damages or restitution by the federal court[.]"  *Green v. Mansour*, 474 U.S. 64, 73 (1985); *see Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 848 n.5 (9th Cir. 2002), *opinion amended on denial of reh'g*, 312 F.3d 416 (9th Cir. 2002) ("[W]e consider declaratory relief retrospective to the extent that it is intertwined with a claim for monetary damages that requires us to declare whether a past constitutional violation occurred.  In such a situation, however, declaratory relief is superfluous in light of the damages claim." (quoting *People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1202 n.2 (10th Cir. 2002))).  Plaintiff's *Bivens* claims assert the same constitutional violations as his declaratory relief claims.  *See* Prop. TAC ¶¶ 148-88.  As such, declaratory relief is superfluous and those claims would be futile.

To the extent Plaintiff seeks prospective relief, he fails to show the likelihood of a future injury.  When addressing claims under the DJA, the Ninth Circuit "ha[s] long held that the district court must first inquire whether there is an actual case or controversy within its jurisdiction." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005).  "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable

---

declaratory relief."  *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001), *as amended* Aug. 15, 2001.

under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). In order to

invoke the jurisdiction of the federal courts, Article III of the Constitution requires a plaintiff to

show

> (1) [he] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)

(citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-56 (1992)). "These elements of standing must

be supported in the same way as any other matter for which a plaintiff bears the burden of proof,

i.e., with the manner and degree of evidence required at the successive stages of the litigation."

*Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (citing *Lujan*, 504 U.S. at 561). "A suit

brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III

federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*,

386 F.3d 1169, 1174 (9th Cir. 2004) (citation omitted).

Plaintiff asserts that he currently "remains on probation and thus has continuing interaction

with law enforcement." Prop. TAC ¶ 92. As a result, he "continues to fear that ICE will again

improperly place a detainer on him." *Id.* To that end, Plaintiff "would like to travel to Mexico

and Germany to visit family," but he fears traveling internationally "due to fears that ICE will

prevent him from returning to the United States at a port of entry[.]" *Id.* ¶ 93. Plaintiff provides

examples of this occurring to other individuals and alleges that between "yea[r]s 2008 and 2012,

ICE improperly placed ICE detainers on over 800 United States citizens." *Id.* ¶¶ 90-91, 93.

"In the particular context of . . . declaratory relief, a plaintiff must show that he has

suffered or is threatened with a concrete and particularized legal harm . . . coupled with a

sufficient likelihood that he will again be wronged in a similar way." *Canatella v. State of Cal.*,

304 F.3d 843, 852 (9th Cir. 2002) (quotations and citations omitted). Plaintiff fails to show a

sufficient likelihood that ICE officials will place another detainer on him. Although Plaintiff

articulates his fear of being subject to another immigration detainer, he does not explain why or

how this is likely to occur again. In comparison, the court in *Morales v. Chadbourne*, found the

38

plaintiff had standing to sue for injunctive relief where the plaintiff alleged "[s]he [was] an American citizen who federal authorities ha[d] twice inappropriately detained on a detainer alleging immigration violations" and where "ICE officials told her that this could happen to her again." 996 F. Supp. 2d at 37-38. Plaintiff makes no such allegations here; rather, his fears are merely speculative on these allegations.

Plaintiff's assertion that his status as a probationer requires him to encounter law enforcement is insufficient to establish a "*real* and *immediate* injury or threat of future injury that is caused by defendants[.]" *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008) (emphasis in original); *see, e.g.*, *City of L.A. v. Lyons*, 461 U.S. 95, 108 (1983) ("[I]t is no more than conjecture to suggest that in every . . . encounter between the police and a citizen, the police will act unconstitutionally and inflict injury without provocation or legal excuse. And it is surely no more than speculation to assert either that [the plaintiff] himself will again be involved in one of those unfortunate instances, or that he will be arrested in the future[.]"). Plaintiff's fears, as alleged, are merely "conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quotations omitted). Indeed, the Supreme Court has explained that

> [t]he reasonableness of [the plaintiff's] fear is dependent upon the likelihood of a recurrence of the allegedly unlawful conduct. It is the reality of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions. The emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant.

*Lyons*, 461 U.S. at 107 n.8.

Plaintiff offers no facts suggesting it is likely that ICE officials will issue another immigration detainer on him. For instance, there are no allegations ICE officials have continued to question his immigration status, have sought additional detainers on him, or even had any contact with him at all since his release from custody in 2009. To the extent Plaintiff fears ICE officials could issue another detainer on him in the event he is jailed again, courts "are . . . unable to conclude that the case-or-controversy requirement is satisfied by general assertions or inferences that in the course of their activities [plaintiffs] will be prosecuted for violating valid criminal laws." *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974). Courts instead "assume that

United States District Court
Northern District of California

1  [plaintiffs] will conduct their activities within the law and so avoid prosecution and conviction as

2  well as exposure to the challenged course of conduct said to be followed by [the defendants]." *Id.*

3          Finally, while Plaintiff provides several examples of ICE officials allegedly placing

4  improper immigration on other United States citizens to show that his "fear was not conjectural or

5  hypothetical[,]" Prop. TAC ¶¶ 66, 90-91, this ignores the fact that "the injury also must be direct

6  and personal to the particular plaintiff." *Catholic League for Religious & Civil Rights v. City &*

7  *Cty. of S.F.*, 624 F.3d 1043, 1066 (9th Cir. 2010).  Plaintiff does not explain how his examples are

8  directly related to him or otherwise suggest an injury personal to Plaintiff.  *See Friends of the*

9  *Earth, Inc.*, 528 U.S. at 181 (2000) ("The relevant showing for purposes of Article III standing,

10  however, is not injury to [others] but injury to the plaintiff.").

11          Accordingly, the Court finds leave to amend would be futile as to Plaintiff's declaratory

12  relief claims.

13          4.    <u>Timothy Aitken</u>

14          Plaintiff's Proposed TAC adds Field Office Director Aitken as a defendant in his

15  individual and official capacities.  Prop. TAC ¶ 14.  Plaintiff alleges Aitken was responsible for

16  formulating, implementing, approving, and/or allowing policies and/or customs applicable to

17  ICE's enforcement activities in northern California, including the (1) investigation of detainees in

18  the custody of northern California authorities; (2) issuance of immigration detainers with respect

19  to such persons; (3) acquisition of custody of such persons; and (4) subsequent detention and

20  treatment of such persons.  *Id.*  Plaintiff also alleges Aitken had the "power and authority to

21  change policies or customs" and was also responsible for (1) ensuring that ICE's policies,

22  customs, practices, and activities—including the issuance of ICE detainer requests—comported

23  with the U.S. Constitution and applicable federal law and regulations; and (2) "training and

24  supervising his staff[.]"  *Id.*

25          Defendants point out, however, that it is unclear which claims Plaintiff alleges against

26  Aitken.  Opp'n to Mot. to Am. at 16.  The only claims alleged against Aitken appear to be those

27  seeking declaratory relief, which are asserted against "all Defendants."  Otherwise, the proposed

28  TAC alleges FTCA claims against only the United States and *Bivens* claims against only Chang

1   and Garcia.

2        As only the United States may be properly named as a defendant in an FTCA action,

3   Aitken cannot be a defendant as to those claims.  *See Lance v. United States*, 70 F.3d 1093, 1095

4   (9th Cir. 1995) ("The United States is the only proper defendant in an FTCA action.").  The

5   proposed TAC also does not assert any *Bivens* claims against Aitken.  Plaintiff acknowledges

6   Aitken's absence, but he explains he "believes that discovery will provide a firm basis for

7   asserting *Bivens* claims against Aitken, and in the meantime is proceeding carefully and

8   diligently."  Reply to Mot. to Am. at 11; Dkt. No. 103.  Plaintiff's belief does not negate the fact

9   that the Proposed TAC, as it stands, lacks facts demonstrating Aitken personally violated

10  Plaintiff's constitutional rights.

11       Plaintiff does not, for instance, set forth facts to show Aitken took part in the decision to

12  issue the immigration detainer or had any role whatsoever in Plaintiff's interrogation.  *See Chavez*

13  *v. United States*, 683 F.3d 1102, 1112 (9th Cir. 2012) (no qualified immunity for supervisor who

14  directly participated in alleged constitutional violations where conduct "would be a clear Fourth

15  Amendment violation to a reasonable officer"); *Blandino v. Immigration & Customs Enf't*

16  *Officers*, 2011 WL 588342, at *2 (N.D. Cal. Feb. 10, 2011) (dismissing complaint where plaintiff

17  did not allege any facts showing supervisor caused or proximately caused violation of plaintiff's

18  civil rights).  Nor does Plaintiff allege Aitken ordered Chang and Garcia to violate Plaintiff's

19  constitutional rights or even knew of their conduct.  *See OSU Student All. v. Ray*, 699 F.3d 1053,

20  1073 (9th Cir. 2012) ("Nobody would argue . . . that a supervisor who orders subordinates to

21  violate constitutional rights escapes liability under *Iqbal*.  As we held in *Starr*, even a supervisor's

22  knowledge and acquiescence will suffice for liability in some circumstances.").  Although Plaintiff

23  asserts Aitken was "responsible for formulating, implementing, approving, and/or allowing

24  policies and/or customs applicable to ICE's immigration enforcement activities in northern

25  California, including ICE's investigation of detainees in the custody of northern Californian

26  authorities [and] its issuance of immigration detainers[,]" he does not describe any specific policy

27  that would lead to unconstitutional conduct.  Prop. TAC ¶ 14; *see Righetti v. Cal. Dep't of Corr. &*

28  *Rehab.*, 2013 WL 1707957, at *1 (N.D. Cal. Apr. 16, 2013) ("No policy or practice liability may

United States District Court
Northern District of California

United States District Court
Northern District of California

be found against a defendant where 'there is no allegation of a specific policy implemented by [a defendant] or a specific event or events instigated by [a defendant] that led to [the] purportedly unconstitutional [conduct].'" (quoting *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (alterations and emphases in original))).

Plaintiff also cannot hold Aitken responsible as Chang and Garcia's supervisor in a *Bivens* action.  The Supreme Court has made it clear that in a *Bivens* action, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.  *Iqbal*, 556 U.S. at 676 (2009).  "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Id.*; *see OSU Student All.*, 699 F.3d at 1071 ("*Iqbal* makes crystal clear that constitutional tort claims against supervisory defendants turn on the requirements of the particular claim—and, more specifically, on the state of mind required by the particular claim—not on a generally applicable concept of supervisory liability.").

In sum, Plaintiff must have specific allegations against Aitken to state a claim against him.  As the proposed TAC currently stands, it does not contain any facts to state a claim against Aitken in either his individual or official capacities and leave to amend would be futile.

## CONCLUSION

Based on the foregoing analysis, the Court finds leave to amend appropriate as to some claims, but futile as to other claims as Plaintiff currently pleads them in his Proposed TAC.  Accordingly, the Court **ORDERS** as follows:

1.    Plaintiff's Motion is **GRANTED** as to his FTCA intentional infliction of emotional distress, false imprisonment, and negligence claims;

2.    Plaintiff's Motion is **DENIED** as to his FTCA claims for negligent infliction of emotional distress and abuse of process;

3.    Plaintiff's Motion is **GRANTED** as to his First and Fourth Amendment *Bivens* claims, as well as to his Fifth Amendment equal protection claim;

4.    Plaintiff's Motion is **DENIED** as to his Fifth Amendment substantive due process

1    and self-incrimination claims, as well as his Eighth Amendment *Bivens* claim;

2        5.      Plaintiff's Motion is **DENIED** as to his Declaratory Judgment Act claims; and

3        6.      Plaintiff's Motion is **DENIED** as to adding Timothy S. Aitken as a defendant.

4        As this Order also addresses the arguments raised in Defendants' Motions to Dismiss (Dkt.

5    Nos. 87, 90), those motions are hereby terminated.

6        **IT IS SO ORDERED.**

7

8    Dated: February 26, 2016

9    _____
     MARIA-ELENA JAMES
10   United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28